129 N.J. Super. 412 (1974)
324 A.2d 52
GENERAL MOTORS CORP., ETC., PLAINTIFF-APPELLANT,
v.
JAMES H. BLAIR, ETC., DEFENDANT-RESPONDENT. GENERAL MOTORS CORP., ETC., PLAINTIFF-APPELLANT,
v.
JAMES H. BLAIR, ETC., DEFENDANT-RESPONDENT. EDWARD JACKSON, COMPLAINANT,
v.
HYATT BEARING, ETC., RESPONDENT-APPELLANT,
v.
JAMES H. BLAIR, ETC., DEFENDANT-RESPONDENT. STEVE THOMPSON, COMPLAINANT,
v.
GENERAL MOTORS CORP., ETC., RESPONDENT-APPELLANT,
v.
JAMES H. BLAIR, ETC., RESPONDENT. RUBY J. PLUMMER, COMPLAINANT,
v.
DELCO-REMY, ETC., RESPONDENT-APPELLANT,
v.
JAMES H. BLAIR, ETC., RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 1974.
Decided July 25, 1974.
*416 Before Judges HANDLER, MEANOR and KOLE.
Ms. Virginia D. Fenton argued the cause for appellant General Motors Corporation (Messrs. Carpenter, Bennett & Morrissey, attorneys; Mr. Thomas L. Morrissey, of counsel; Ms. Virginia D. Fenton and Mr. Alan S. Ziegler on the brief).
Ms. Judith Musicant, Deputy Attorney General, argued the cause for respondent James H. Blair, Director of the Division on Civil Rights (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. George F. Kugler, Jr., former Attorney General, of counsel; Ms. Virginia Long Annich, Deputy Assistant Attorney General, of counsel and on the brief).
The opinion of the court was delivered by HANDLER, J.A.D.
These are consolidated appeals which challenge the validity of the interrogatory default procedure rule promulgated by the Division on Civil Rights. N.J.A.C. 13:4-8.3. The appeals, on leave granted, arise from the attempted application by the Director of the Division of this rule against appellant (General Motors) in three separate cases of alleged employment discrimination. The respective complainants, Edward Jackson, Ruby J. Plummer and Steve Thomas, had been employed at different plants and by different divisions of General Motors. Each was fired from work and filed a complaint in the Division on Civil Rights, alleging that the discharge was on account of race. Shortly after the filing of the complaints the Division in each case served a set of interrogatories upon the respective divisions of General Motors as the respondents. In the Plummer case, the complaint had been filed some months earlier than the other two complaints, and the interrogatories served on the respondent were answered. Upon receipt of the answers, however, the Division served supplemental interrogatories on General Motors. Thereafter in each case General Motors filed a motion *417 to strike the interrogatories, which was denied by the Director. In addition, a petition for a declaratory judgment that the interrogatory default procedure rule was inapplicable was filed in each case and was also denied.
We consider first whether the interrogatory default procedure rule falls within the scope of the rule-making power of the Division on Civil Rights. A detailing of this rule is in order. It provides that if the Director of the Division on Civil Rights determines that a complaint "must be resolved expeditiously," interrogatories may be issued to the respondent; if the respondent then fails to answer or to file a motion to strike the interrogatories, the Director is required to enter an order extending time to answer for an additional ten days and at the same time notify respondent that a default shall be entered upon the failure to answer the interrogatories within this extended time period. N.J.A.C. 13:4-8.3 (a) (1) (2). If answers are not forthcoming, a formal entry of default is entered based upon a supporting affidavit. N.J.A.C. 13:4-8.3(c)(4)(d). Upon the entry of default the rule states that "matters regarding which questions were asked [shall be] taken as established for the purposes of the case in accordance with the claim of the complainant," and all defenses shall be suppressed. N.J.A.C. 13:4-8.3(c)(1) (3). Upon notice to respondent a default hearing is scheduled for the purpose of receiving complainant's proofs of the allegation of discrimination. N.J.A.C. 13:4-8.3(e)(g). The hearing examiner assigned to the matter shall proceed on the default order and supporting affidavit and shall receive "any other evidence proffered by the complainant and shall determine if the facts established by the complainant and admitted by respondent constitute an act of discrimination, and if so, the amount of damages or other recommended relief." N.J.A.C. 13:4-8.3(h). No proofs offered by the respondent at the hearing shall be admissible in evidence. Id. The Director after the recommendation of the hearing examiner shall enter a final order and, if discrimination has been *418 found, the Director's order shall provide appropriate relief. N.J.A.C. 13:4-8.3(i)(j).
General authority for the promulgation of rules is found in the Law Against Discrimination. N.J.S.A. 10:5-8(g) prescribes that: "The Attorney General shall: Adopt, promulgate, amend, and rescind suitable rules and regulations to carry out the provisions of this act." Further, N.J.S.A. 10:5-18 states that the Attorney General "shall establish rules of practice to govern, expedite and effectuate" the procedure of the Division. This general authority would permit the adoption of procedural rules relating to discovery and the expedition of hearings in appropriate cases. In addition to this authority, further support may be found in the Division's broad investigatory powers. N.J.S.A. 10:5-8(h) and (i) and N.J.S.A. 10:5-14.
General Motors takes the position that the Law Against Discrimination requires judicial enforcement of all investigatory orders and that the interrogatory default procedure rule counters this particular statutory mandate. It relies in part on the statutory language of N.J.S.A. 10:5-14.1, viz:
At any time after the filing of any complaint the Attorney General may proceed against any person in a summary manner in the Superior Court of New Jersey to compel compliance with any of the provisions of this act, or to prevent violations or attempts to violate any such provisions, or attempts to interfere with or impede the enforcement of any such provisions or the exercise or performance of any power or duty thereunder.
And N.J.S.A. 10:5-19 which states:
Observance of an order of the director issued pursuant to the provisions of this act may be enforced by a civil action brought by the director in the Superior Court to obtain such relief as may be necessay to effectuate the terms of said order.
These statutory provisions have primary reference to the direct enforcement of the act itself as well as to the implementation of Division orders entered pursuant to the *419 act. Their objective is to enable the Director to secure full compliance with the act and the complete effectuation of the particular terms and conditions of his orders. These provisions do not suggest, however, that direct judicial enforcement is the stole redress available to accomplish the aims of an administrative order, especially one which is provisional, procedural or interlocutory in nature.
General Motors also points to the language of N.J.S.A. 10:5-8(i) which provides:
The Attorney General shall:
In connection with any investigation or hearing held pursuant to the provisions of this act, subpoena witnesses, compel their attendance, administer oaths, take the testimony of any person, under oath, and, in connection therewith, require the production for examination of any books or papers relating to any subject matter under investigation or in question by the division and conduct such discovery procedures which may include the taking of interrogatories * * * as shall be deemed necessary by the Attorney General in any investigation. The Attorney General may make rules as to the issuance of subpoenas by the director. The failure of any witness when duly subpoenaed to attend, give testimony, or produce evidence shall be punishable by the Superior Court of New Jersey in the same manner as such failure is punishable by such court in a case therein pending.
This section contemplates judicial enforcement of subpoenas. It also recognizes that compliance with ancillary discovery orders in connection with an investigation or hearing may be induced through the contempt powers of the court. There is no requirement to be implied in this provision, however, that information to be gained through interrogatories must be obtained by the issuance of a subpoena or must be elicited, directly or indirectly, by invoking judicial contempt procedures. It is reasonably clear that, in the absence of a subpoena, the statute does not mandate judicial enforcement of demands for answers to interrogatories. N.J.S.A. 10:5-8(i) may be viewed as providing a judicial mechanism whereby the Director may issue subpoenas and indeed require answers to interrogatories pursuant to administrative demand therefor. The section should *420 not be interpreted, however, as obligating the Director to seek through judicial means answers to interrogatories when this may not be fitting relief or the only redress sought. In the case of International Union, United Automobile, etc., Workers of America v. National Labor Relations Bd., 148 U.S. App. D.C. 305, 459 F.2d 1329 (1972), it was noted:
It is, of course, always possible for the opposing party to seek enforcement of the subpoena in court. But enforcement against a really intransigent party can be costly and time consuming, particularly in administrative proceedings where the enforcement process is of necessity collateral to the main case. [148 U.S. App. D.C. 305, 459 F.2d at 1338-1339]
In a particular case the Director may conclude that appropriate relief is the swift resolution of the controversy, based upon an expedited hearing in which proofs addressed to the complaint are received and a determination made thereon. And in that situation an apt sanction to accomplish that end, as envisaged by the interrogatory default procedure rule, may be the imposition against the recalcitrant respondent of a default, with its consequences of the suppression of defenses, the exposure to adverse inferences, and the loss of the right to present affirmative evidence.
In N.J. Builders, Owners and Managers Ass'n v. Blair, 60 N.J. 330 (1972), the court remarked upon the exceptionally strong legislative statement of concern about the adverse effects of discrimination not only on rights of individuals but on the "institutions and foundation of a free democratic society." Id. at 335. It concluded that "the literal prohibitions" in the statute did not forbid the use of "a rational approach toward fulfilling the responsibility with which the agency has been charged." Id. at 336. Justifying an apparent derogation of the literal wording of the statute, the court went on:
Moreover we think it fair to assume that the need for such a rule as we are here considering probably did not occur to the draftsman *421 of the Law Against Discrimination; and furthermore we think it fair to entertain the belief that had such a need been foreseen, appropriate provision for such a rule would have been forthcoming. The emergence after enactment of problems and situations not anticipated by the legislative imagination calls upon the judiciary for a sympathetic response consonant with what one may presume the legislature would have said had it indeed spoken. [at 339]
See also Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399 (1973); Polk v. Cherry Hill Apartments, Inc., 62 N.J. 55 (1972); Jackson v. Concord Co., 54 N.J. 113 (1969); Fraser v. Robin Dee Day Camp, 44 N.J. 480 (1965); Levitt & Sons, Inc. v. Division Against Discrimination, 31 N.J. 514 (1960), app. dism. 363 U.S. 418, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960). We conclude, therefore, that the interrogatory default procedure rule is not ultra vires the legislative grant of power under the Law Against Discrimination.
It also contended that the rule constitutes a usurpation of the judicial function and is contrary to the constitutional doctrine of separation of powers. Supplementing this point is the additional argument that the constitutional standards of due process are breached by this procedure. It is pointed out that the rule does not permit judicial intervention and, because in its application there are merged investigatory powers with adjudicative authority, there is no realistic opportunity for a hearing at any stage on the critical issues with respect to the decision to apply the rule in the first instance and the adequacy of the time allowed initially to answer the interrogatories. Finally, it is argued, the effect of the rule is to eliminate a hearing on the merits.
When prosecutorial and adjudicative functions are concentrated in the same body and exercised in a quasi-judicial setting there is an increased danger that resultant dispositions may be arbitrary. Our court has demonstrated its awareness of this basic problem of undue merger of functions in many administrative agencies. E.g. N.J. State Bd. of Optometrists v. Nemitz, 21 N.J. Super. 18, 37 (App. *422 Div. 1952). See also, 2 Davis, Administrative Law, § 13.02 at 181-182 (1958).
The interrogatory default procedure rule, however, provides a respondent with reasonable procedural safeguards including notice and a meaningful opportunity to be heard. N.J.A.C. 13:4-8.3(a) prescribes that a default shall be entered only if a respondent fails to answer or file a motion to strike after having been served with interrogatories and given notice of the consequences of a failure to answer. The rule provides for the avoidance of the entry of a default. Thus, a respondent may file a motion to strike interrogatories within the time to answer, which motion may be granted; if it is not, then a default may be pursued along the steps already outlined. N.J.A.C. 13:4-8.3(b). The Director may also, upon the denial of a motion to strike interrogatories, "enter any other appropriate order." Id. After the entry of a default but before the default hearing, the respondent may petition the Director to vacate the default and to reopen the case provided respondent by affidavit shows "good cause" and furnishes "full and complete answers to all interrogatories." N.J.A.C. 13:4-8.3(f). If the default is vacated, then the matter proceeds in the normal fashion to investigation, finding of probable cause, conciliation or public hearing (which rights were otherwise deemed to have been waived by respondent's original failure to answer the interrogatories. N.J.A.C. 13:4-8.3 (c) (2)). N.J.A.C. 13:4-8.3(g). Additionally the Director may relax the application of its rule in the interest of justice. N.J.A.C. 13:4-1.2(b).
The interrogatory default procedure rule is not dissimilar to the court procedures providing that a complaint, counter-claim or answer shall be stricken upon a party's failure to serve timely answers to interrogatories. R. 4:23-5. This sanction comes into play upon an ex parte application indicating that the adversary has not served answers within the time allowed by R. 4:17-4(b). The Division's rule does require that a time period for answering the interrogatories *423 be fixed by the Director. The rule further mandates an automatic ten-day extension beyond this time period before a respondent is considered in default. Thus a respondent must be accorded a reasonable period of time initially in which to answer and may be entitled to more if granted an extension, and in any event would be allowed ten more days to file answers. Similarly, R. 4:23-2 provides the sanctions for failure to comply with an order compelling discovery and includes, among other things, the making of an adverse inference against the recalcitrant party regarding the withheld information; the prohibiting of that party from introducing designated evidence or supporting designated claims; rendering a default judgment against that party or a citation for contempt. Douglas v. Harris, 35 N.J. 270 (1961).
The most telling criticism of the default rule is lack of an early opportunity for judicial determination of the propriety of the interrogatories or a review of the consequences of a failure to answer, as there is in the New Jersey court rules, R. 4:17-5. But due process does not require resort to a judicial tribunal prior to the instituting of sanctions against a party for failure to comply with an informational demand in an administrative agency. International Union, United Automobile, etc., Workers of America v. National Labor Relations Bd., supra; Princeton First Aid v. Division on Civil Rights, 124 N.J. Super. 150 (App. Div. 1973); see, e.g., N.J.S.A. 54:2-15. See Note, "Use of Contempt Power to Enforce Subpoenaes and Orders of Administrative Agencies," 71 Harv. L. Rev. 1541 (1958); Benton, "Administrative Subpoena Enforcement," 41 Tex. L. Rev. 874, 895-902 (1963). See also, Note, "Discovery in Federal Administrative Proceedings," 16 Stanf. L. Rev. 1035, 1076 (1964). Moreover, should a respondent fail to obtain initial relief through the Division or be unsuccessful in obtaining interlocutory judicial review, an appeal is always available to respondent after a final determination by the Director. The review on such an appeal would canvass the *424 entire proceeding including the fairness and propriety of the procedure under which a default was entered. Since any interim order of the Director in the course of an administrative hearing is subject to judicial scrutiny on an appeal from a final determination, the Director has not by this rule arrogated to himself the exercise of final judicial power. Cf. David v. Vesta Co., 45 N.J. 301, 326-327 (1965). Consequently, we do not perceive that the interrogatory default procedure rule as adopted is lacking in reasonable standards to insure administrative due process or that it trenches upon the constitutional separation of governmental powers.
The interrogatory default procedure rule was adopted pursuant to N.J.S.A. 52:14B-4(b), which provides that a rule "prescribing the organization or procedure of an agency" may be adopted at any time without prior notice or hearing. General Motors contends that the interrogatory default procedure rule is not such a rule of procedure and that therefore it is invalid for want of a hearing prescribed in N.J.S.A. 52:14B-4(a). It relies on Brown v. Heymann, 62 N.J. 1, 17 (1972), where the court said that the Administrative Procedure Act "requires notice with respect to rules which affect members of the public" or "operate directly upon members of the public," in contradistinction to rules of procedure.
The interrogatory default procedure rule does not "operate directly upon members of the public." This phrase suggests quasi-legislative or substantive regulations governing conduct of the public which is subject to administrative regulation. Such an administrative rule under the Administrative Procedure Act would be substantive in the sense that it embraces an "agency statement of general applicability and continuing effect that implements or interprets law or policy * * *." N.J.S.A. 52:14B-2(e). A rule of this kind must be adopted upon notice and hearing. By contrast, a rule may describe "the organization, procedure or practice requirements" of the agency. Id. Indeed, with respect to such *425 rules, each administrative agency is required to exercise its rule-making powers, i.e. "adopt rules of practice setting forth the nature and requirements of all formal and informal procedures * * *." N.J.S.A. 52:14B-3(2). In our view, the interrogatory default procedure rule appertains to practice or procedure and was validly promulgated without prior notice or hearing. N.J.S.A. 52:14B-4(b).
Finally, General Motors contends that the interrogatory default procedure rule was improperly invoked and applied in the three cases here under consideration. It is noted that the Director apparently applies this rule in every employment case, on the assumption that every such complaint requires expedition and the triggering of the rule. The Director, however, has not promulgated a rule of general applicability that employment discharge cases as a class shall be expedited and shall automatically be subject to the interrogatory default procedure rule. It is stressed on his behalf that discrimination is subtle and insidious and requires inventive countermeasures such as this rule. This would not appear, however, to justify the wholesale application of the interrogatory default procedure rule every time a worker is fired and files a complaint with the Division. There may be cases where to do so would be arbitrary or unfair and inappropriate. An action for a declaratory judgment under N.J.S.A. 52:14B-8 before the administrative agency in a proper case should be available for an early resolution of this question.
Additionally, it is emphasized that the interrogatories propounded by the Director in these particular cases are extremely numerous and complex and appear to range far beyond the circumstances involved in the firings of the individual complainants. While interrogatories need not be circumscribed by the narrow allegations of the complaint, they should nevertheless be reasonably limited to the end that a fair adjudication may obtain. We are also mindful of the argument that the Director arbitrarily fixed too short a time *426 within which respondents were required initially to answer these cumbersome and complicated interrogatories.
The issues thus raised cannot be resolved satisfactorily on the record of these consolidated appeals. In light of these potentially serious questions, we remand the matters to the Director to permit respondents to seek a declaratory ruling from the Director as to why expedition is required in each case and in conjunction therewith to renew their motions to strike the interrogatories (in whole or in part) and to fix a reasonable time within which to answer any interrogatories which are not stricken.
Accordingly, we uphold the validity of the interrogatory default procedure rule as promulgated but reverse the actions of the Director in denying respondents' motions to strike and for a declaratory judgment as to the applicability of the rule, and remand the matters for further proceedings thereon. We do not retain jurisdiction. No costs.