FRANK HUMIEC, PLAINTIFF, v. HOFFMANN–LaROCHE, INC., ET ALS., DEFENDANTS.

SALLY SUPPA, PLAINTIFF, v. HOFFMANN–LaROCHE, INC., ET ALS., DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided July 23, 1987.

*Katherine V. Dresdner* for plaintiffs (*Freeman & Bass,* attorneys).

Kerry M. Parker for defendants (*Crummy, Del Deo, Dolan, Griffinger & Vecchione,* attorneys).

YANOFF, J.S.C. (retired and temporarily assigned on recall).

Sally Suppa (Suppa) and Frank Humiec (Humiec) are plaintiffs in a series of suits filed against defendant Hoffmann–La-Roche, Inc. alleging unlawful discharge. The complaints of both Suppa and Humiec were dismissed for failure to make discovery. The problems herein arise on motions to restore the complaints to the trial list, and on defendant's motion for attorney's fees if the cases are restored.

In *Suppa,* the complaint, filed October 18, 1985, alleged employment discrimination. The answer, after a consent to an extension of time, was filed January 27, 1986.

On January 15, 1986 defendant requested document production from plaintiff, pursuant to *R.*4:18–1. The documents requested consisted of manuals and publications issued by defendant, allegedly governing plaintiff's term of employment. The documents not having been produced on April 28, 1986, defendant's attorneys made a telephone request in which an attorney promised, on behalf of plaintiff, to produce the documents by May 9, 1986. This was confirmed by letter the following day. No documents were forwarded and defendant moved before the Superior Court for an order compelling production within 15 days. *See R.*4:23–1. In the absence of opposition, on May 23, 1986, Judge Camarata signed the order.

Thereafter, on May 29, 1986, June 3, 1986, and August 28, 1986, plaintiff's counsel, by letter, advised plaintiff of the outstanding document request, and that her case would be dismissed if she did not produce the documents. Plaintiff's attorneys made no attempt to advise defense attorneys of the situation. There is no indication that plaintiff's attorneys made further attempts to obtain the requested documents.

On June 10, 1986 Judge Thompson signed an *ex parte* order dismissing plaintiff's complaint for failure to comply with the order of May 23, 1986. *R.*4:23–2(b)(3).

Plaintiff and her lawyers did not communicate until December 1986. Nor did plaintiff's lawyers communicate with defendant's attorney from June 1986 to April 1987, when plaintiff eventually produced some of the requested documents.

On May 7, 1987 plaintiff filed a motion to vacate the dismissal and to restore plaintiff's complaint. In her supporting certification plaintiff's counsel averred that plaintiff's "failure to respond to counsel's request is submitted to constitute excusable neglect."

In *Humiec*, plaintiff's complaint alleging age employment discrimination was filed November 8, 1985. The answer was filed February 24, 1986, time having been extended. Defendant's interrogatory demand was served on May 21, 1986, pursuant to *R*.4:17–1. On May 23, 1986, plaintiff's lawyers wrote asking plaintiff to come to their offices to answer the interrogatories. The interrogatories were due July 21, 1986.

At oral argument, plaintiff's attorney revealed that plaintiff was represented by the law firm with which she is associated, not only in this case, but in a workers' compensation case, and that he came to the office at various times in connection with the workers' compensation matter to see lawyers in the division of that office handling that type of case. Neither the workers' compensation section of the office, nor the lawyer handling this case knew of the other's activity and Humiec was not sent to the appropriate lawyer to answer the interrogatories.

After the due date of the interrogatories, on July 21, a follow-up letter was sent to plaintiff's lawyers, dated August 12, 1986. Nevertheless, plaintiff's lawyers did not attempt to communicate with plaintiff for the purpose of getting answers.

On August 25, 1986 Judge Neagle signed an *ex parte* order dismissing plaintiff's complaint for failure to supply answers to interrogatories pursuant to *R*.4:23–5.

On September 16, 1986 and on October 10, 1986 plaintiff's counsel sent a letter to plaintiff requesting that plaintiff appear to prepare answers. There was no further communication between plaintiff and counsel's litigation department until the latter part of November 1986. Answers were not completed until the early part of 1987, and not forwarded to defense counsel until April 13, 1987. There is no indication that plaintiff's counsel made any attempt prior to April 1987 to communicate with defense counsel or the court to explain the delay in reinstating plaintiff's case.

On April 21, 1987 plaintiff filed a motion to vacate the dismissal and to restore the complaint. In her supporting

certification plaintiff's attorney claimed that "plaintiff has a meritorius [*sic*] case and is entitled to his day in court" and that plaintiff's "failure to answer interrogatories was excusable neglect."

The foregoing reveals a pattern of combined client, either disinterest or neglect, and attorney failure to properly prosecute causes of action.

In *Suppa*, documents requested were those which were the basis for plaintiff's claim "that there was an implied contract of employment with Hoffmann–LaRoche expressing and implying continuity of employment until the age of normal retirement." These were precisely the documents involved in the seminal case of *Woolley v. Hoffmann–LaRoche*, 99 *N.J.* 284 (1985). If they were available nowhere else, they could have been found in the record of that case. Plaintiff's attorney made no attempt to call these facts to the attention of the judge. Despite the *ex parte* order dismissing the complaint, plaintiff's lawyers did not communicate with plaintiff from August 28, 1986 to December 1986. And only in April 1987, when the case had long been dismissed, did plaintiff's attorneys pay attention to it. There followed the motion in May 1987 to vacate the dismissal and restore the complaint.

In *Humiec*, the pattern is similar. Although the complaint was filed in November 1985, plaintiff also had sought equivalent relief by an action in federal court. Perhaps it was for that reason that the plaintiff did not respond, for a long period of time, to a request to come to the plaintiff's law firm's office to answer interrogatories. However, as indicated, plaintiff did come to the firm's office for a workers' compensation case, and whoever met with him did not see to it that he was sent to the proper place to answer interrogatories. The result was the August 1986 order dismissing the complaint for failure to answer interrogatories. Despite the fact that the rule required that applications to restore for failure to answer interrogatories be made within 30 days, it was not until 21 days later that

plaintiff's lawyers wrote to plaintiff requesting that plaintiff appear to answer interrogatories. Thereafter, neither plaintiff nor plaintiff's lawyers took any action in the case until November 1986 and, in fact, the answers to interrogatories were not forwarded to defendant until April 1987, almost a year after service.

I ruled, in response to motions by plaintiffs' attorneys, that both cases be restored, conditioned upon reimbursement of attorneys' fees to defendant.

If I followed the explicit language of $R.4:23-5$(a), the orders of restoration could not have been made. Under it,

On formal motion made by the delinquent party within 30 days after service upon him of the order, the court may vacate it, provided fully responsive answers to the propounded interrogatories are presented and the delinquent party pay costs in the amount of $50.00 to the Clerk of the Superior Court.

But $R.4:50-1$ provides that the court may relieve a party from a final judgment or order for: "(a) mistake, inadvertence, surprise or excusable neglect...." $R.4:50-2$ requires that the motion be made "within a reasonable time, and for reasons (a) ... not more than one year after the judgment, order...." $R.1:1-2$ reads: "Unless otherwise stated, any Rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice."

In these cases, the application to restore was made under $R.4:50$, with appeal also to $R.1:1-2$. There is a dichotomy between $R.4:23-5$(a) and $R.4:50-1$ and $R.1:1-2$. What $R.4:23-5$(a) does routinely can be undone under $R.4:50-1$. As noted by Judge Baime in *Wilkins v. Hudson County Jail and County of Hudson*, 217 *N.J.Super.* 39 (App.Div.1987):

We recognize 'the need to instill firmness and meaning to the provisions of our discovery rules, thereby maintaining a consistent and predictable sense of order ...' *Crews v. Garmoney*, 141 *N.J.Super.* 93, 96 (App.Div.1976). A party has a 'duty to disclose the (identity and) opinions of his experts, and a failure to do so may, in the judge's discretion, result in the exclusion of such evidence at trial. *Fanfarillo v. East End Motor Co.*, 172 *N.J.Super.* 309, 312 (App.Div.1980). *See also Maurio v. Mereck Construction Co., Inc.*, 162 *N.J.Super.* 566, 570 (App.Div.1978; *Clark v. Fog Contracting Co.*, 125 *N.J.Super.* 159, 162 (App.

Div.1973), certif. den. 64 *N.J.* 319 1973); *Falcone v. N.J. Bell Tel. Co.*, 98 *N.J.Super.* 138, 146 (App.Div.1967), certif. den. 51 *N.J.* 190 (1968).

Nevertheless, there is a general disinclination to invoke the sanction of exclusion—especially where plaintiff's entire case thereby stands or falls—when remedies having a lesser tendency to affect the merits are at hand. [*Id.* at 44-45; citations omitted]

*Accord Johnson v. Mountainside Resp. Disease Assoc.*, 199 *N.J.Super.* 114, 120 (App.Div.1985) (citing *N.J. Highway Authority v. Renner*, 18 *N.J.* 485, 495 (1955)).

One has only to compare *Zaccardi v. Becker*, 162 *N.J.Super.* 329 (App.Div.1978), certif. den. 79 *N.J.* 464 (1978), (herein *Zaccardi I*), with *Zaccardi v. Becker*, 88 *N.J.* 245 (1982), (herein *Zaccardi II*), to see the differences of approach. *Zaccardi I* involved a malpractice action in which plaintiff failed to answer interrogatories within the time required by rule. For 17 months after the order of dismissal, the case remained on the docket and was adjourned for discovery at least ten times, without objection on the part of defendant. Finally, plaintiff's lawyers moved to vacate the dismissal and restore the case to the calendar. The Appellate Division reversed the trial court's reinstatement of the case; the Supreme Court denied certification. In *Zaccardi II* plaintiff again instituted the malpractice action. Defendants pleaded the statute of limitations. The Supreme Court, reversing the Appellate Division, held that the statute could not be asserted as an affirmative defense. Justice Pashman found in the failure of defendant's attorneys to object to trial adjournments

by not notifying either plaintiffs or the Court that they objected to the adjournments, under the circumstances, plaintiff could reasonably have believed that defendants impliedly consented to the continuation of the case as an ongoing controversy. Equitable considerations, consequently, do not require dismissal of this second complaint. [88 *N.J.* at 255]

The opinion was not unanimous. Justice Schreiber concurred because there were unexplored discovery implications under the doctrine of *Lopez v. Swyer*, 62 *N.J.* 267 (1973). Justice Pollock dissented because he did not find any conduct on the part of defendants' attorneys which could have misled plaintiffs, and

because, in his view, *Zaccardi II* overruled *Zaccardi I sub silento*.

This being the state of the law, the appropriate course for a trial court is to permit restoration. But, as indicated in *Wilkins, supra,* there is no reason why an attempt cannot be made to have the system operate expeditiously by holding attorneys accountable for failure to properly process cases which they undertake.

Defendant's attorneys oppose restoration of the cases, and urge that if the complaints are reinstated, their client bc reimbursed for the legal fees incurred in the dismissal and restoration process. In *Suppa,* the affidavit of the lawyers for Hoffman–LaRoche, Inc. shows a total of $1,807.50 for legal fees incurred by reason of failure of plaintiff to fulfill discovery requirements. The sum claimed in *Humiec* for the same reason is $2,013. The affidavits of services are detailed and explicit, showing the dates and the nature of the services. I have reviewed them. Only the items in *Humiec* of $146 for intraoffice conferences on June 3, 1986 and in *Suppa* of conference calls on February 4, and March 3, 1986, totalling $176, may not be related to a failure to comply on plaintiff's side, and I disallow them.

Plaintiffs' lawyers oppose assessment of attorneys' fees, relying upon *Sunset Beach Amusement Corp. v. Belk,* 33 *N.J.* 162 (1960) and similar cases. *Sunset Beach* sets out the normal New Jersey policy against the imposition of attorney's fees, relying upon the language of *R.*4:42–9 (then *R.*4:55–7), reading "(a) Actions in which Fee is Allowable. No fee for legal services shall be allowed in taxed costs or otherwise, except...." Among the exceptions is not listed the situation at bar. Nevertheless, just as *R.*4:23–5(a) is tempered by *R.*4:50–1, so is this rule modified by *Rules* 4:23–1, –2, –3 and –4. *R.*4:23–1 and –2 authorize imposing "reasonable expenses, including attorney's fees, caused by the failure [to make the discovery authorized by the rule.]" *R.*4:23–3 and –4 authorize similar

fees for failure to admit facts and attend depositions. It is clear, therefore, that the rules contemplate that a delinquent party reimburse the other party for the cost of obtaining the discovery. This is not the situation in *Berthelsen v. Hall*, 194 *N.J.Super.* 22 (App.Div.1984) which reluctantly held that a trial court lacked power to impose sanctions for institution of a baseless suit. Here, defendant obtained discovery only when plaintiffs sought restoration of their causes of action. The delays on plaintiffs' part were multiple and long continued.

Plaintiffs' attorneys argue that the rules contemplate that only $50 be paid for restoration of a complaint. This is, however, only where plaintiff restores within 30 days after making discovery as of right. The situation here is far different. The costs imposed to reimburse defendant's attorneys for the time spent in communicating with plaintiffs' attorneys, preparing papers, and making court appearances, by reason of failures on plaintiffs' side, go far beyond the routine sanction to which plaintiffs' attorneys refer.

Plaintiffs' attorneys argue also:

Plaintiffs' counsel respectfully submits further that the amount sought for the remainder of services are excessive and unreasonable for the minimal amount of work involved in preparing a motion to compel, the Order of dismissal, and opposition to plaintiffs' motion to restore. These matters are not complicated legal issues requiring extensive research. It is also respectfully submitted that plaintiffs' counsel should not have to pay fees to the corporate defendant or its counsel on the basis of whatever contract may exist between Crummy, Del Deo, Dolan, Griffiner [*sic*] & Vecchione and Hoffmann–LaRoche. Any fees assessed against plaintiffs' counsel should be based upon the reasonable value of the work and should not constitute a windfall to the corporate defendant or its counsel. These expenses cannot be viewed as reasonable in light of Rule 4:23 and the fact that plaintiffs' counsel did not act in bad faith.

As to this, I note that the fees are not excessive. Additionally, there is no question that this is what Hoffmann–LaRoche, Inc. paid. It comes with poor grace for an attorney to argue that the burden of his client's, or his, failure to comply with the rules should fall upon the adversary.

Plaintiff's lawyer argues also that her firm is entitled to special consideration because it is handling the case on a

contingency. One response is that if lawyers choose to accept the risks and rewards of such a fee arrangement, they cannot avoid their obligations as lawyers, not only to their clients and their adversaries, but to the court. The courts are where trial lawyers work and earn fees. Filing fees pay a small fraction of court costs. It is simply not fair to abuse the system by putting a court to the time-consuming task of passing on applications to restore. There is a cost not only in wasted judge, court officer, court clerk, and court reporter, time, but in the cases which are delayed because of lack of diligence in prosecuting actions.

Finally, the orders here made are a response to an appeal to a judge's discretion, a discretion which must be exercised under *Rules* 4:23–1, –2, –3 and –4.

All four sections of the rule, as indicated, require the delinquent party "to pay the reasonable expenses, including attorney's fees, caused by the failure [of the delinquent party], unless the Court finds that the failure was substantially justified, or that other circumstances make an award of expenses unjust." Quite obviously, the rules contemplate the payment of more than $50 which must be paid routinely under *R*.4:23–5(a). The obligation "to pay the reasonable expenses, including attorney's fees" is not dependent upon a finding of deliberate misconduct or any specified kind of negligence on the part of the party at fault; the patent objective is to discourage failure to comply with the rules, and also to even the balance by reimbursing the other party.[1]

In *Wilkins, supra,* the Appellate Division referred the matter of an attorney's "misbehavior" to the Office of Attorney Ethics. I regard the relief granted in this case as less stringent than that employed in the *Wilkins* case, and within the letter and spirit of the rules. It is simply an attempt to prevent the

---

[1] As to the inequity of forcing unnecessary litigation upon a party, see *Nylander v. Rogers,* 41 *N.J.* 236, 242 (1963).

burden of a party's failure to comply with the rules from falling upon the other party. Restoration of these two cases to the trial list without such requirement would be an injustice to the defendant. Without an indication that defendant's ability to defend has been impaired, that problem need not be considered.

This is precisely the type of relief given in *Maurio v. Mereck Construction Co.*, 162 *N.J.Super.* 566 (App.Div.1978). In *Maurio*, the court held, without reference to any rule:

> Instead, we vacate the order of dismissal and order a new trial in the matter on the condition, however, that defendants be reimbursed, if they wish, for the costs, expenses and counsel fees attendant on the prior trial itself, as distinguished from what went before, and on this appeal. If defendants wish to avail themselves of this opportunity, they should within 10 days hereof notify plaintiffs' counsel and submit itemized bills setting forth the costs and expenses actually incurred, together with reasonable counsel fees. The costs of reimbursement shall be borne by plaintiffs' counsel and shall not be passed on to the plaintiffs themselves. [162 *N.J.Super.* at 570]

What remains is determination of the portion of the costs to be borne by the attorney and client. In *Suppa*, had the lawyers paid attention to the demand for documents or moved more promptly to restore the case, a delay of almost a year would not have occurred. There is no reason why the sum of $1,631.50 should not be paid entirely by Suppa's lawyers. I allow defendant in *Humiec* the sum of $1,867. The facts there differ from those in *Suppa*. Part of the delay is attributable to Humiec's failure to choose between the federal court and the state court as the forum in which to seek relief. But there are also the facts that inefficiency in Humiec's lawyers' office probably caused his failure to answer interrogatories and that their slowness in moving to restore the case seems to evidence callous disregard of their responsibilities to both client and court. It is likely that Humiec's delay in choosing between a state or federal court was attributable to his lawyers' slowness in communicating with him.

I, therefore, rule that 30% of the $1,867 to be paid in *Humiec* come from Humiec's pocket, and the balance from his lawyers.

An order should be submitted restoring each case, conditioned upon satisfactory completion of discovery, payment of the $50 sanction to the clerk and the attorneys' fees attributable to the case, payable as set forth above.