600 A.2d 158

IN RE TIMOFAI SANITATION CO., INC., DISCOVERY DISPUTE.

Superior Court of New Jersey
Appellate Division

Argued October 2, 1991—Decided December 27, 1991.

Before Judges KING, GRUCCIO and BROCHIN.

*Robert J. Bernot* argued the cause for appellant *pro se* (*Thatcher & Lanza,* attorneys; *Robert J. Bernot,* of counsel and on the brief).

*Carla Vivian Bello,* Senior Deputy Attorney General, argued the cause for respondent New Jersey Board of Public Utilities (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Carla Vivian Bello* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

This case involves a discovery dispute which resulted in the imposition of a $4,300 sanction, representing costs, expenses and attorneys' fees, by an administrative law judge against the appellant law firm, Thatcher & Lanza. The appellant raises these issues: (1) the ALJ exceeded her authority in imposing compensatory monetary sanctions on the law firm; (2) the motion for sanctions was procedurally defective and the ALJ's order improper; (3) the calculation of the sanction of $4,300 was erroneous.

This matter began when the Board of Public Utilities (BPU) issued an order to show cause against Timofai Sanitation Company, Robert Timofai, and Delores Timofai (Timofai respondents) on April 26, 1989, for alleged violations of our statutes and regulations regarding solid waste disposal. A second order to show cause was issued on October 25, 1989. Appellant Thatcher & Lanza, a law firm, was retained by the Timofai respondents to represent their interests in the proceedings. The matter was assigned to the Office of Administrative Law (OAL) for hearing. On June 8, 1989 a prehearing conference was held and a discovery and motion schedule was set by the presiding ALJ.

Discovery began on June 23, 1989 when the BPU served interrogatories on the Timofai respondents. The Timofai Sanitation Company and Robert Timofai answered the interrogatories on July 26, 1989. Delores Timofai answered on August 26, 1989. According to the BPU, 95 of the 101 interrogatories directed to the corporation contained unresponsive or incomplete answers. Robert and Delores Timofai each failed to provide responsive answers to 97 of 101 of their respective interrogatories. The Timofai respondents in turn objected to interrogatory answers received from the BPU. On August 21, 1989 the presiding ALJ ordered the BPU staff to provide more responsive answers.

The presiding ALJ cautioned all parties to detail any discovery problems in a motion no later than September 22, 1989. On September 22 the BPU staff filed a motion to compel each of the Timofai respondents to provide more specific answers to the staff's interrogatories. The Timofai respondents did not file any motion objecting to the alleged insufficiency of the BPU staff's previous answers. Responses to the BPU staff's motion to compel were required by September 29, 1989. No responses were given however.

The parties appeared before the presiding ALJ on October 23, 1989 to argue the BPU staff's motion of September 22, 1989. She granted the BPU's motion to accept the staff's initial interrogatory answers as "complete" since the Timofai respondents did not file a motion objecting to the BPU's answers. Mr. Thatcher, of the appellant law firm, signed a consent at that time to the entry of an order compelling the Timofai respondents to provide more specific interrogatory answers.

More responsive answers to the interrogatories were due by October 31, 1989. The answers were not provided, however, until November 9, 1989. No motion for an extension of time was made nor was any explanation for the delay given by the Timofai respondents or their attorneys.

Discovery problems persisted; again the BPU staff objected to the supplementary answers provided by the Timofai respondents. The BPU claimed that the respondents failed to answer the interrogatories within the relevant time period and objected to over half the responses that required a more specific answer. The Timofais either did not answer or gave nonresponsive answers to the remainder of the interrogatories. As a result of these deficiencies, the BPU on December 8, 1989 filed another motion to compel discovery. In addition to seeking more responsive answers, the motion sought sanctions against the Timofai respondents and Thatcher & Lanza for their failure to answer.

Mr. Bernot of Thatcher & Lanza, on behalf of the Timofai respondents, filed an answer to the December 8, 1989 motion, himself objecting that many of the interrogatories propounded by the BPU staff were unrelated to the matter under investigation. The BPU staff replied to the respondents' answer on January 8, 1990, requesting compliance with the ALJ's order for more specific answers.

On February 21, 1990 respondents were again ordered by the presiding ALJ to fully answer the BPU's June 1989 interrogatories and to provide the documents requested by the staff no later than February 29, 1990. No sanctions were imposed. These answers were provided on February 26, 1990 and resulted in two subsequent meetings with the presiding ALJ regarding the adequacy of the responses. Although the prior discovery problems were not fully resolved, on March 15, 1990 the BPU staff was given oral permission by the ALJ to serve additional supplementary discovery on the Timofai respondents by March 26. Answers to the supplemental discovery were due on April 5.

On April 4, 1990, one day before supplemental discovery answers were due, Thatcher & Lanza initiated a telephone conference call between the presiding ALJ and the Deputy Attorneys General representing the BPU about the firm's representation of the Timofai respondents. Thatcher & Lanza apprised the ALJ for the first time that relations with their clients had deteriorated to such a degree that the firm was withdrawing as counsel and the Timofai respondents were obtaining substitute counsel. The deterioration of the attorney-client relationship was attributed primarily to the Timofai respondents' failure to pay the substantial legal fees, perhaps as much as $100,000, that had accumulated. The presiding ALJ advised Thatcher & Lanza that the firm must file a motion for withdrawal and that until the firm was officially substituted it would still be responsible for supplying the outstanding discovery due the following day.

Despite the ALJ's directive, no answers were provided on April 5, 1990. As a result, the BPU filed a motion on April 9, 1990 for an order imposing sanctions on Thatcher & Lanza for failure to comply with the ALJ's order. The BPU's motion was argued before the presiding ALJ on April 27, 1990. After each side presented argument on the issue of sanctions, the ALJ ruled that monetary sanctions were warranted against the law firm. The Attorney General's office was directed to prepare an affidavit of legal services to facilitate computation of sanctions. The affidavit and supporting documents were filed on June 6, 1990.

The presiding ALJ issued an order imposing sanctions in the amount of $4,300 against the firm on August 1, 1990. In her order, the ALJ noted that the sanctions were imposed for the "failure of Thatcher & Lanza to comply with court orders, and for their failure to request relief from either the requests by the staff, or the order of this court." According to the ALJ, the proper procedure was for the attorneys to make a motion, instead of simply ignoring court orders as they had done on several occasions.

Thatcher & Lanza appealed the decision to the Office of Administrative Law (OAL) pursuant to *N.J.A.C.* 1:1–3.2(c) and 1:1–14.10(k)(4), which provide for review of sanction awards by the OAL Director. These provisions, in pertinent part, state:

*N.J.A.C.* 1:1–3.2 **Jurisdiction of the Office of Administrative Law**

(c) Matters involving the administration of the Office of Administrative Law as a State agency are subject to the authority of the Director. In the following matters as they relate to proceedings before the Office of Administrative Law, the Director is the agency head for purposes of review: ...

4. Sanctions under *N.J.A.C.* 1:1–14.14 consisting of the assessment of costs or expenses....

*N.J.A.C.* 1:1–14.10 **Interlocutory Review**

(a) [A]n order or ruling may be reviewed interlocutorily by an agency head at the request of a party....

(k) In the following matters as they relate to proceedings before the Office of Administrative Law, the Director is the agency head for purposes of interlocutory review: ....

4. Sanctions under *N.J.A.C.* 1:1–14.14 consisting of the assessment of costs or expenses.

The OAL Director and Chief Administrative Law Judge granted the request for interlocutory review on August 17, 1990, noting that Thatcher & Lanza's recent withdrawal from the case made the issue of sanctions ripe for review at this time. Thatcher & Lanza had been promptly replaced in the enforcement proceeding upon their withdrawal on April 6, 1990 by the firm of Hannoch & Weismann. The enforcement proceeding was soon settled for a fine of $125,000.

The Director and Chief Judge reviewed the transcript of the oral argument held before the presiding ALJ, as well as the supporting documentation provided by Thatcher & Lanza and the Attorney General's office. On August 24, 1990, based upon her review of the record, the Director and Chief Judge affirmed the imposition of sanctions against Thatcher & Lanza. In upholding the presiding ALJ's decision, the Director said:

> I am especially persuaded in this appeal as to the appropriateness of sanctions by the fact that the law firm ignored specific orders entered by [the ALJ] as early as October 23, 1989. The firm did not seek relief from the judge's rulings, although the firm did respond to various motions to compel more specific answers or simply to respond, as they were brought by DAG Barzey. Furthermore, the record is barren of any evidence that the firm notified the judge of any difficulties it was experiencing with its clients nor did it advise of its desire to withdraw from representation until April 4, 1990. Judge Reiner had good cause to hold the law firm in part responsible for impeding the progress of this proceeding. As officers of the court, the lawyers representing respondents had an obligation to comply with the judge's order or to come forward to explain why they could not.

As to the appellant's argument that the sanctions imposed were "illegal, inappropriate, unduly harsh, erroneously calculated, and under the facts and circumstances, unwarranted," the Director noted that *N.J.A.C.* 1:1–14.4 [1] provides sanctioning

---

[1]The extant sanction provision, *N.J.A.C.* 1:14–4(c), was recodified as a separate new rule, *N.J.A.C.* 1:1–14.14, effective June 3, 1991. The new rule deals exclusively with sanctions for misconduct other than failure to appear and is the rule applicable in this appeal. *N.J.A.C.* 1:1–14.4 now encompasses sanctions only for failure to appear. *See* 23 *N.J.R.* 639(a), 23 *N.J.R.* 1786(a). The

authority "for unreasonable failure to comply with any order of a judge or with any requirements of this chapter." As to the other allegations, the Director noted the discretionary nature of sanctions and stated that the presiding ALJ's decision had a reasonable basis in the record. The Director also upheld the amount of the sanctions as reasonable.

## I

■ Appellant first contends that the ALJ had no legal authority to sanction the law firm. We disagree and conclude that the ALJ had power under the Uniform Administrative Procedure Rules to impose reasonable monetary sanctions on attorneys as representatives of parties if they culpably failed or refused to cooperate with discovery orders.

The Office of Administrative Law (OAL) is an independent office established within the State's executive branch of government by *N.J.S.A.* 52:14F–1. Authority over the OAL is vested in a Director, who is granted the statutory power to create and regulate standards of practice and procedure for administrative hearings. *N.J.S.A.* 52:14F–5. The procedural standards governing the conduct of cases are codified in the Uniform Administrative Procedure Rules, Title 1, of the New Jersey Administrative Code. *N.J.A.C.* 1:1–1.1 to 1:1–21.6. Provisions of this Code are to be "construed to achieve just results, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." *N.J.A.C.* 1:1–1.3(a). Several enforcement mechanisms are present in the Code, one of which grants ALJ's the express power to sanction for failure to comply with discovery. Under *N.J.A.C.* 1:1–10.5,

> By motion of a party or on his or her own motion, a judge may impose sanctions pursuant to *N.J.A.C.* 1:1–14.14 for failure to comply with the requirements of this subchapter. Before imposing sanctions, the judge shall provide an opportunity to be heard.

remainder of this opinion will refer to the recodified provision, *N.J.A.C.* 1:–1–14.14.

In conjunction with the above provision, *N.J.A.C.* 1:1–14.14 provides:

(a) For unreasonable failure to comply with any order of a judge or with any requirements of this chapter, the judge may:

  1. Dismiss or grant the motion or application;

  2. Suppress a defense or claim;

  3. Exclude evidence;

  4. Order costs or reasonable expenses, including attorney's fees, to be paid to the State of New Jersey or an aggrieved representative or party; or

  5. Take other appropriate case-related action.

We take special note of *N.J.A.C.* 1:1–14.14's reference to "failure to comply with any order of a judge or with any requirements of this chapter [14]" insofar as it specifies the various sanctions an ALJ may impose. The sanctions for failure to cooperate with discovery imposed by *N.J.A.C.* 1:1–10.5 are derived by reference from the general sanction powers contained in Subchapter 14 entitled "Conduct of Cases." Under *N.J.A.C.* 1:1–14.4, of which *R.* 1:1–14.14 was subsection (c) during the time here pertinent and before the recodification of June 3, 1991 (see n. 1 *ante* ), the ALJ may sanction either "a party" or "a representative." We read these two sections of Subchapter 14 (§ 14.4 and § 14.14) dealing with sanctions in *pari materia* to permit sanctions of counsel as "representatives" of parties if they are culpably responsible for violations of discovery orders during the conduct of proceedings before an ALJ. We also rely on *N.J.A.C.* 1:1–14.6(j), describing the presiding judge's powers, which states: "The judge may utilize his or her sanction powers to ensure the proper conduct of the parties and their representatives appearing in the matter." The power of an ALJ to impose sanctions as to a party has been recognized by the Supreme Court. *In re Uniform Admin. Procedure Rules,* 90 *N.J.* 85, 447 *A.*2d 151 (1982). Noting that this sanction power is "essential to the proper conduct of administrative hearings," the Supreme Court stated that ALJs must have the power to enforce their directives and control the conduct of the proceedings. *Id.* at 106, 447 *A.*2d 151.

The OAL's control over the Bar as to matters of attorney ethics and conduct also has been confirmed by our Supreme Court. In *Matter of Tenure Hearing of Onorevole*, 103 *N.J.* 548, 511 *A.*2d 1171 (1986), the Court addressed the issue of whether the OAL has the authority to determine the qualifications of attorneys that appear before it in contested cases. In determining that the OAL does have the power to assess attorney qualifications, the Supreme Court looked to general principles of administrative agency practice, statutory standards, and the constitutional and regulatory power of the courts over the bar. *Id.* at 554, 511 *A.*2d 1171. The Court stated:

> Although an administrative agency, such as the OAL, is not a "court" in the true or literal sense of the term, many principles and rules that govern judicial proceedings and determinations can be applied to an agency's quasi-judicial or adjudicative functions. Judicial rules of procedure and practice are transferable to administrative agencies when these are conducive to ensuring fairness, independence, integrity, and efficiency in administrative adjudications. *Hackensack v. Winner*, 82 *N.J.* 1, 28–29 [410 *A.*2d 1146] (1980). It is therefore reasonable to conclude that an administrative agency that otherwise has the power to prescribe and enforce its own rules of practice and procedure can, within the limitations imposed by paramount judicial authority and its own enabling statute, formulate and enforce standards relating to the ethics qualifications of attorneys before it. [*Id.* [103 *N.J.*] at 554–555 [511 *A.*2d 1171]].

This court recently relied on *Onorevole* in holding that the OAL has jurisdiction to disqualify a lawyer-legislator in a contested administrative case. *Wood v. Dep't of Community Affairs*, 243 *N.J.Super.* 187, 198–199, 578 *A.*2d 1257 (App.Div. 1990). Noting that the OAL has a "legitimate special interest in protecting the integrity of the administrative hearing process," we concluded that the legislature "cannot deprive the OAL ... of the authority to regulate the qualifications and conduct of attorneys who appear before it." *Ibid.; Onorevole, supra*, 103 *N.J.* at 555, 511 *A.*2d 1171.

These cases demonstrate that the OAL, though an executive branch agency, has powers somewhat comparable to those of the judiciary in regard to controlling the conduct of persons who appear before their judges. Judicial recognition that the

OAL has the authority to regulate attorney ethics and disqualification may logically be extended to include sanctions. This is especially true in light of *N.J.A.C.* 1:1–1.3(a), which counsels a construction of the Administrative Code "to achieve just results, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

As *N.J.A.C.* 1:1–14.14 indicates, various sanctions for discovery violations are available to an ALJ depending upon the circumstances of the case. Judge Lefelt states in 37 S. Lefelt, *N.J. Practice, Administrative Law and Practice* § 187, at 194 (1988):

> Obviously, which sanction will be imposed depends upon the situation. However, each sanction must be case related and usually a sanction will be devised that redresses unfairness yet permits reaching the merits. This is especially true when a party's lawyer has caused the problem since a dismissal in this instance would be most harsh on the party.

This court has upheld the power of a Superior Court judge to assess sanctions against attorneys, instead of their clients, for discovery infractions. In *Oliviero v. Porter Hayden Co.,* 241 *N.J.Super.* 381, 387–388, 575 *A.*2d 50 (App.Div.1990), we affirmed sanctions imposed on plaintiff's attorneys for the "inconveniences and expenses" incurred in attending an aborted three-day trial where the plaintiff's attorneys called a key witness who was not mentioned in answers to interrogatories. In *Oliviero* we stated that if discovery rules are to be effective, a judge must be authorized to impose appropriate sanctions for violations. *Id.* at 387, 575 *A.*2d 50. This includes sanctions for conduct that is negligent or merely careless. *Id.* at 385, 575 *A.*2d 50. *See also Maurio v. Mereck Constr. Co.,* 162 *N.J.Super.* 566, 570, 394 *A.*2d 110 (App.Div.1978).

There is similar authority for the imposition of attorney's fees solely upon the attorney and not upon the client for the failure to conduct discovery which resulted in dismissal of the plaintiff's complaint. In *Humiec v. Hoffmann–LaRoche, Inc.,* 221 *N.J.Super.* 632, 535 *A.*2d 556 (Law Div.1987), Judge Yanoff restored unlawful discharge complaints to the trial list after

dismissal for plaintiffs' failure to make discovery. As a condition for restoring the complaint, the plaintiffs had to reimburse legal fees incurred by the defendant. On the first complaint, these costs were charged solely to the plaintiffs' attorneys for their failure to answer interrogatories and their slowness in moving to restore the case; on the second complaint, the attorneys were assessed 70% of the sanction where the record showed that the plaintiffs themselves were responsible for some of the delay in choosing a forum. *Id.* at 642, 535 *A.*2d 556. *See also Chambers v. NASCO Inc.*, 501 *U.S.* ——, ——, 111 S.Ct. 2123, 2132–34, 115 *L.Ed.*2d 27, 44–46 (1991) (Justice White's decision on inherent power to sanction counsel by assessment of fees and costs).

*Oliviero* and *Humiec* contemplate there will be times when it is more equitable for the attorney, and not the client, to bear the financial responsibility for needless delay and waste of resources incurred. Since we conclude that the ALJ had the power to sanction counsel, we now turn to the particulars of the sanction imposed in this case.

II

The proceeding in which the sanctions were imposed was an administrative proceeding before the Board of Public Utilities in which the agency was investigating and seeking to penalize certain corporations and individuals engaged in the solid waste disposal industry for alleged anticompetitive practices. In the course of the proceeding, the Board's staff attorneys submitted a large number of interrogatories to the parties. The parties to whom the interrogatories were submitted answered some and objected to many. The staff attorney of the Board of Public Utilities was dissatisfied with the responses. The ALJ before whom the matter was proceeding never ruled on the adequacy of the answers to interrogatories or on the merits of the objections; however, a consent order was entered on October 23, 1989, requiring one of the parties to the investi-

gation (Delores Timofai) to "provide more specific answers to the interrogatories propounded on behalf of the staff of the Board in the above captioned matter on or before October 31, 1989." The record is not clear whether there were other consent orders requiring answers by the other parties to the investigation.

On December 8, 1989 the staff of the BPU moved to compel more responsive answers and requested sanctions in the form of costs against the attorneys for the Timofai respondents for their failure to provide answers to discovery in accordance with the consent order of October 23, 1989. Mr. Bernot of Thatcher & Lanza answered the staff's motion and filed a further answer directed to the issue of sanctions on January 15, 1990. On March 15, 1990, the presiding ALJ orally permitted the staff of the Board of Public Utilities to propound a supplemental round of discovery before March 26, and directed that the answers to this supplemental discovery be provided by the Timofai respondents by April 5, 1990. No sanctions were imposed at this time.

On April 4, 1990 Mr. Bernot informed the Board's staff that his law firm was withdrawing from legal representation of the Timofai respondents because of their failure to pay legal fees. There was no formal motion pending for leave to withdraw or substitution of attorney filed. *See R.* 1:11–2 (conditions withdrawal on substitution of attorney). "In the absence of [a specific] rule, a judge may proceed in accordance with the New Jersey Court Rules, provided the rules are compatible with these purposes." *N.J.A.C.* 1:1–1.3(a). In a conference call on April 4, the ALJ reminded Mr. Bernot that he continued to represent the Timofai respondents until relieved or substituted and that part of the continuing obligation was to complete all outstanding discovery, in particular, the discovery due on April 5, 1990.

The discovery was not provided. On April 9 the Board's staff moved for imposition of sanctions against the law firm of Thatcher & Lanza. The presiding ALJ held that the firm was

liable to the BPU "in the amount of $4,300.00 in costs associated with their direct complicity in the respondents' failure to provide discovery as ordered by the court on October 23, 1989 and April 4, 1990 and resulting in the need for the staff of the Board to file motions to secure discovery."

We think there is a significant due process question here. The attorneys were entitled to be informed of the precise conduct for which sanctions were sought, and they were so informed by the staff's letter motion of April 9, 1990. The motion stated as follows:

> By this letter the staff respectfully moves for the imposition of sanctions against the law firm of Thatcher & Lanza for failure to provide discovery to the staff's supplemental set of data and information requests relative to the first order to show cause in the above referenced matter.

The supplementary interrogatories or information requests that are the subject of the motion were served on the attorneys on March 26 and the attorneys were required to provide the answers by April 6. That was a period of eleven days. The interrogatories were voluminous and detailed. Answering them clearly required the cooperation of the Timofai respondents. The answers to at least some of the interrogatories may very well have implicated the individual respondents' rights against self-incrimination.

Apparently, no one disputes there was a substantial fee dispute between Thatcher & Lanza and their clients which led to the attorneys desire to withdraw, expressed to the ALJ on April 4. We now know that Hannoch & Weisman promptly was substituted in their place and that the BPU's enforcement claim against the respondents soon was resolved for a fine of $125,-000.

Under the circumstances, we conclude that sanctions could not properly be imposed on the attorneys for violating the discovery order without an evidentiary hearing and findings of fact as to whether the attorneys had it within their power to answer the supplemental interrogatories between March 26 and April 6 under the circumstances that then existed.

The presiding ALJ and the Director and Chief Judge of the OAL discuss a history of the attorneys' failure to comply with discovery demands and to answer interrogatories during the proceedings. Perhaps the attorneys' improper conduct during prior discovery could have been the basis for earlier sanctions or other disciplinary action. However, that was not the basis upon which the Board's motion, which resulted in the imposition of these sanctions, sought relief on this occasion. Sanctions should be limited to the conduct for which they actually were sought and sufficient notice provided.

In deciding whether or not sanctions should be imposed upon counsel, the OAL should consider:

1. The time period available to answer the supplemental interrogatories of March 26, 1990.

2. The extent and complexity of the interrogatories.

3. The ability of counsel to secure the cooperation of the clients to answer the interrogatories during that period of time, giving due regard to the obviously strained relationship between counsel and client at that time.

4. The propriety of imposing sanctions on the client, rather than or in addition to the attorney, if the facts show that the client was the root cause of obstructing the administrative process. We note that the ALJ apparently also contemplated proceeding for sanctions against the client at a later hearing.

5. Naturally, the scope of the sanctions should be limited to the relief requested by the State in its application of April 9, 1990. The sanctions should not deal with prior conduct not the subject of the specific application before the ALJ.

*See General Motors Corp. v. Blair*, 129 *N.J.Super.* 412, 425–426, 324 *A.*2d 52 (App.Div.1974).

Judge Lefelt has summarized the nature of sanctions in this context well, stating:

Sanctions may not be punitive but must be compensatory. No New Jersey administrative agency has authority to punish for contempt or to impose fines for contumacious behavior. An administrative agency may not punish a litigant for open threats to orderly procedure. The sanction selected by an agency must be coercive in effect to advance a litigant's interests. Monetary sanctions are designed to compensate parties who suffer out-of-pocket expenses because of the improper or disruptive conduct. Before a monetary sanction can be imposed, the affected individuals must submit proof of out-of-pocket expenses. [37 S. Lefelt, *supra*, § 187, at 194].

*See also Wright v. Plaza Ford,* 164 *N.J.Super.* 203, 395 *A.*2d 1259 (App.Div.1978).

We remand to the OAL for a plenary hearing on the propriety and extent of the sanctions.