686 A.2d 1275

RENA PONTIDIS AND SPIRIDON PONTIDIS, HER HUSBAND, PLAINTIFFS, v. KRIS SHAVELLI AND DINA SHAVELLI, DEFENDANTS/THIRD–PARTY PLAINTIFFS/RESPONDENTS, AND SKATERS WORLD OF NEW JERSEY, DEFENDANT/THIRD–PARTY PLAINTIFF.

PETER KOUKOUNAS, KONSTANTINOS KOUKOUNAS, AND IOANA KOUKOUNAS, DEFENDANTS, v. ST. GEORGE'S GREEK ORTHODOX CHURCH OF CLIFTON, THIRD–PARTY DEFENDANT, AND AMERICAN TRUST INSURANCE CO. AND GEORGE W. PAYNE & CO., THIRD–PARTY DEFENDANTS.

IN THE MATTER OF AMIRALI Y. HAIDRI, ESQ., APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 6, 1997—Decided January 22, 1997.

Before Judges PETRELLA, LANDAU and WALLACE.

*Christine M. Guerci,* attorney for appellant.

*DeYoe, Heissenbuttel & Mattia,* attorneys for respondents (*Edward W. Martin,* on the brief).

The Opinion of the Court was delivered by

LANDAU, J.A.D.

Appellant, Amirali Y. Haidri, Esq. (Haidri), attorney for plaintiffs in the underlying action, appeals, upon leave granted, from a Law Division order directing Haidri to pay a money sanction to defendants arising out of the refusal of plaintiffs' expert to testify at a deposition.

These are the facts. On May 29, 1990, plaintiff, Rena Pontidis suffered a fall at Skaters World of New Jersey in Wayne, New Jersey. She filed a complaint against defendants Kris Shavelli, Dina Shavelli, Peter Koukounas, Konstantinos Koukounas, Ioana Koukounas, Skaters World of New Jersey and various fictitious defendants. Shavelli filed an answer and a third party complaint against St. George's Greek Orthodox Church of Clifton. Skaters World filed an answer and a third party complaint against American Trust Insurance Co. and George W. Payne & Co. St. George's

moved for and was granted summary judgment on November 10, 1993.

On November 25, 1995, DeYoe Heissenbuttel and Mattia (DeYoe), attorneys for defendants Shavelli, noticed the deposition of John H. Hanst (Hanst), plaintiffs' recreational hazard expert. The deposition, initially scheduled for January 24, 1996, was changed to January 26, 1996, at the DeYoe offices.

Michael Agnello, a per diem associate of Haidri, certified that he called the DeYoe firm three days before the deposition and informed them that Hanst required a $500 deposit for his testimony. Agnello said that he was informed by Hanst's wife on the same day that $500 was the "reservation fee" and that Hanst's fee for testifying was $250 per hour. According to Agnello, immediately upon completion of the conversation with Mrs. Hanst, he called DeYoe and informed them that the $500 was only a reservation fee and that the testimony fee was an additional $250 per hour.

The certification of Marilyn Moore, the office manager at DeYoe, indicated that "plaintiff's attorney" called, but only advised that Hanst "was charging a $500.00 fee *for testifying* at his deposition" and that "if Mr. Hanst's testimony went over two [2] hours time, Mr. Hanst charged $250.00 per hour". Moore maintained that she informed plaintiffs' counsel that the deposition probably would not take more than two hours. She promptly sent a $500.00 check to Haidri for submission to Hanst.

On January 26, 1996, all parties gathered in the DeYoe offices for Hanst's deposition. As the deposition was about to begin, Hanst inquired whether the check for the balance of his testimony was "in the room". Edward Martin, an attorney at DeYoe, consulted with a partner in his firm. Martin was informed that because the "arrangement was quite clear that this amount [$500] included testimonial time only, not travel time" there was going to be no further payment unless the deposition extended beyond two hours.

Haidri suggested that the defendants place $500 in escrow until the dispute could be resolved by the court. This was apparently acceptable to Hanst. Defendants' counsel refused to issue another check and Mr. Hanst left without testifying.[1]

Defendants then filed a motion on February 6, 1996, petitioning the court to: (1) compel Hanst's deposition; (2) set a reasonable fee for Hanst's appearance; (3) set a reasonable amount for travel time and expenses for the expert; (4) award defendants counsel fees for the motion and (5) preclude plaintiff from using the expert witness if he failed to appear for the deposition.

The judge granted the motion and assessed a sanction against Haidri personally, stating:

> I am also awarding legal fees to the DeYoe office who went through the motions of doing everything properly right by the book; paying the requested fee of $500; appearing for the deposition; having a court reporter; beginning the deposition; only to be told after five minutes, you have five minutes, unless you pay me more money, this is over. It doesn't work that way.
>
> Now if anyone has to bear the onus, it is you [Haidri], as plaintiff's attorney, who wishes to utilize this expert.
>
> . . . .
>
> I think you are in charge of your case. you are in charge of your witnesses. You are in charge of your experts.

The order provided that: (1) Plaintiff's expert Hanst appear for deposition at the DeYoe firm within thirty days; (2) if Hanst did not show for deposition, he would be barred from testifying at trial; and (3) counsel fees would be paid by Haidri to the DeYoe firm for the "time expended in the preparation of the within motion papers," the actual amount to be determined by the judge after the deposition had been taken and certifications submitted to the court.

Hanst's deposition was taken on March 26, 1996 without incident. Haidri filed a "Motion for Partial Relief from Order of March 1, 1996" seeking an "Order vacating that part of the

---

[1] Haidri contended at the argument on the motion that he was unable to issue his own check because he was not in his office. He therefore attempted to offer an immediate solution to the problem.

Court's Order of March 1, 1996 which awarded counsel fees to DeYoe, Heissenbuttel & Mattia to be paid by plaintiff's attorney". During the hearing on this motion, the judge noted "to the credit of plaintiff's counsel" that the expert appeared at the deposition without any additional fees. However, the judge assessed the situation as follows:

> Well, basically, you hired an expert. The other firm, the DeYoe firm, asked you how much of a fee your expert wanted for his deposition, and they [sic] asked for a $500 payment up front. They paid the money up front, at your office's direction. Your expert appears at the deposition and says "I'm leaving in five minutes, unless you give me another $500." And your firm did nothing to control the situation. The deposition stopped.... They put in time, effort; it—it was unheard of. I've never heard of such an egregious situation where an expert says—who's been paid the amount you asked for, and says, you have five minutes; unless I get another $500 I'm leaving. Now if that's not an applicable sanction, that you pay for their time, I don't know what is.

The motion for partial relief was denied, and on April 29, 1996, an order was entered against Haidri, awarding the DeYoe firm $500.00 for counsel fees and also requiring "plaintiff's attorney to pay plaintiff's expert for any additional fees charged by expert for attending his deposition". Haidri's motion for a stay of the judge's order was denied, but we granted leave to appeal the order, *sua sponte,* on August 1, 1996.

On appeal, Haidri argues that: (1) the imposition of counsel fees against counsel was unauthorized by rule, statute or contract; (2) the court did not have inherent powers to sanction Haidri for conduct which was "not unprofessional nor negligent nor careless nor tantamount to bad faith"; (3) the lower court abused its discretion by awarding $500 for attorney fees; and (4) the lower court abused its discretion by ordering Haidri to pay any additional fees sought by Hanst for attending his deposition.

We reverse.

 A court has the inherent power in appropriate circumstances, to sanction an attorney, rather than the client, particularly when the attorney's improper conduct has resulted in additional costs to the adverse party or the judicial system. *In re Timofai Sanitation Co.,* 252 *N.J.Super.* 495, 505–06, 600 *A.*2d 158 (App.Div.

1991); *Oliviero v. Porter Hayden Co.*, 241 *N.J.Super.* 381, 384–88, 575 *A.*2d 50 (App.Div.1990). In this case, however, we are unable to discern in the record or in the judge's explanation for this sanction, any basis for imposing upon plaintiffs' attorney costs arising from the conduct of his retained expert.

■ Nothing in the record points to a deliberate effort by plaintiffs' attorney to sabotage the deposition, or to his punishable negligence respecting the last minute demands made by Hanst as a condition to testifying. The expert was not Haidri's agent, but a retained independent contractor. Moreover, Haidri appears to have attempted to enable the deposition to proceed by proposing the escrow alternative.

Plaintiffs' attorney was held responsible and sanctioned for conduct of a third party because he was deemed to be "in charge of [his] witnesses." As it was not demonstrated that Haidri had such control, this was an improper exercise of discretionary power. We note that the findings respecting the deponent expert's conduct led to no imposition of sanctions upon that deponent nor upon the parties plaintiff. *See, R.* 4:23–1(c); *R.* 4:23–2(a), (b); *R.* 1:10–2; *cf. B. and H.S. Corp. v. Holly,* 198 *N.J.Super.* 83, 88, 486 *A.*2d 862 (App.Div.1984) *certif. den.* 101 *N.J.* 255, 501 *A.*2d 925 (1985).

The order of sanction against Haidri is reversed, and the matter remanded to the Law Division for continuation of the principal action.