755 A.2d 1214 (2000)
333 N.J. Super. 439
The SUMMIT TRUST COMPANY, Plaintiff-Respondent/Cross-Appellant,
v.
Sherwood BAXT and Saida Baxt, Defendants-Appellants/Cross-Respondents, and
The Grove Mercantile Center, a New Jersey general partnership, Paul Hartman, Paul Baxt, Paula Baxt, Steven Roth, and Oak Electric Company, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 2000.
Decided July 26, 2000.
*1215 Philip L. Guarino argued the cause for appellants/cross-respondents (Wolf Haldenstein Adler Freeman & Herz, attorneys; Helen Davis Chaitman, of counsel and on the brief).
Justin P. Walder, Roseland, argued the cause for respondent/cross-appellant (Walder, Sondak & Brogan, attorneys; Mr. Walder, of counsel and on the brief; John A. Grogan, on the brief).
Before Judges BROCHIN, EICHEN and WECKER.
The opinion of the court was delivered by BROCHIN, J.A.D. (retired and temporarily assigned on recall).
In October 1988, The Summit Trust Company ("Summit") made two construction loans for a total amount of 4.1 million dollars to The Grove Mercantile Center ("Grove"), a partnership, whose partners included appellants Sherwood Baxt and Saida Baxt. The loans were secured by real estate mortgages. Summit filed a foreclosure suit and Grove asserted a lender-liability counterclaim. Summit moved for summary judgment. Its motion relied in part on a mortgage modification agreement, allegedly duly signed and delivered, which contained Grove's release of any claims. The controversy which now confronts us arose from a discovery dispute *1216 engendered by the unexpected appearance among the documents in Summit's "working file" of a photocopy of that mortgage modification agreement signed by one of Grove's partners. Summit's attorneys, respondents Gerald A. Liloia and Anthony J. Sylvester, subsequently admitted that they had caused the copy of the agreement to be placed in the file. It was apparently put there to corroborate Summit's claim that it had received a fax of the signed copy from Grove, but was unable to locate the document bearing the signature in ink of a Grove partner.
The matter before us is an appeal from an order of the Chancery Division which granted the Baxts' R. 4:50-1(f) motion to reopen the judgment in the foreclosure suit, but denied sanctions on the ground that the attorneys had not violated any specific procedural rule upon which sanctions could be predicated.
The hearing judge's findings of fact and his conclusions of law were entered after a hearing conducted at the direction of our Supreme Court. These findings are binding on us because they are amply supported by the evidence presented at the hearing. Rova Farms Resort, Inc. v. Investors, Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). But we disagree with the judge's conclusions of law. Before we relate his findings and explain the basis of our disagreement with the conclusion which he drew from them, we need to describe the unusual procedural history of this case.
During the course of the foreclosure action between Grove and Summit, Grove's attorneys moved to dismiss Summit's complaint, to expunge the mortgage and for sanctions because of the conduct of Summit's attorneys during discovery. Before that motion had been disposed of, the Baxts commenced a separate lawsuit against Mr. Liloia and Mr. Sylvester. In that separate lawsuit, the Baxts sought damages from Mr. Liloia and Mr. Sylvester for the same conduct which was the subject of the sanctions motion. The Baxts alleged that that conduct violated the Rules of Professional Responsibility and constituted spoliation of evidence. The foreclosure action was then settled and the foreclosure case was dismissed, but the settlement agreement preserved the Baxts' right to pursue their damage claims in their separate lawsuit (which we will refer to as the "damage suit") against Mr. Liloia and Mr. Sylvester.
That damage suit was eventually dismissed on Summit's motion for summary judgment. This court affirmed, with one judge dissenting from the majority's holding that no private cause of action could be based directly on a violation of the Rules of Professional Conduct. Baxt v. Liloia, 284 N.J.Super. 221, 664 A.2d 948 (App.Div. 1995), aff'd as modified, 155 N.J. 190, 714 A.2d 271 (1998). The case came before our Supreme Court by reason of the dissent, and the Court affirmed,[1] but it castigated Mr. Liloia and Mr. Sylvester in the following terms:
The record before this Court presents an object lesson in unprofessional behavior by experienced and knowledgeable trial lawyers. For a period spanning the course of at least one month,... defendants Liloia and Sylvester knowingly and deliberately obstructed the discovery process in the Summit foreclosure action by misleading plaintiffs about the source of the signed modification agreement and by refusing to respond candidly to specific requests for direct and accurate information....
....
The inference that may be drawn from this pattern of behavior is that defendants were stonewalling and that they intended to conceal from Grove's attorney the source of the signed copy of the agreement even after repeated clear requests for that information. That defendants placed the copy of the signed agreement in the bank's files prior to *1217 producing them for inspection as the bank's "original" files is particularly disturbing and suggests purposeful misrepresentation. Such conduct appears on its face to violate the New Jersey Rules Governing Civil Practice and the Rules of Professional Conduct.
[Baxt v. Liloia, supra, 155 N.J. at 206-09, 714 A.2d 271.]
The Court then ordered the following redress for Mr. Liloia's and Mr. Sylvester's misconduct:
But for the settlement of the foreclosure litigation, plaintiffs could have sought attorney's fees based on defendants' conduct in that lawsuit. Instead, the Baxts reserved the right to seek attorney's fees against defendants in this action. Because the dismissal of this action leaves plaintiffs without a remedy for defendants' discovery violations, and because the settlement agreement put defendants on notice that the issue of attorney's fees remained to be litigated, in the unique circumstances of this case[,] we will permit plaintiffs to go forward with their reserved right to seek counsel fees by way of a motion pursuant to Rule 4:50-1(f).... They may within 30 days seek to reopen the order of dismissal in Summit Trust Company v. Grove Mercantile Center [the foreclosure suit] for the limited purpose of seeking recovery of reasonable expenses from Gerald Liloia and Anthony Sylvester for violations of the discovery rules. See R. 4:23-3, -4. If plaintiffs pursue their case in that forum, the trial court should determine the scope of defendants' misconduct and the appropriate amount of attorney's fees and costs to be assessed against them.

[Id. at 210-211, 714 A.2d 271.]
In response to Mr. Liloia's and Mr. Sylvester's motion to the Supreme Court for reconsideration, the Court added the following footnote to its opinion:
Our decision is based on the record before us on motion for summary judgment below. The trial court, if plaintiffs seek sanctions for discovery rule violations, and the OAE shall make their determinations de novo on the record as appropriately supplemented pursuant to this decision.

[Id. at 211-12 n. 9, 714 A.2d 271.]
The Baxts made a timely motion to reopen the foreclosure suit in accordance with the Supreme Court's opinion. The Chancery Division granted the motion. In view of the Supreme Court's mandate, there is no merit to the argument that the Baxts' motion to open the judgment in the foreclosure suit should not have been granted. R. 2:11-3(e)(1)(E).
After considering the evidence submitted by the parties, the hearing judge ruled that no proof had been presented showing that Mr. Liloia and Mr. Sylvester had violated any discovery rule. He therefore declined to impose sanctions. The Baxts have appealed from that ruling. They argue to us that sanctions should have been imposed in accordance with the Supreme Court's mandate and because Mr. Liloia and Mr. Sylvester violated R. 4:18-1, R. 4:23-2(b), and the spirit of the discovery rules.
The following is a summary of the facts as found by the hearing judge. During discovery, Grove's attorneys produced their client's documents for Summit's attorneys' inspection. Significantly, those documents included a copy of the mortgage modification agreement signed in ink by Paul Hartman as a general partner of Grove. Summit requested copies of the documents which it had inspected, and the copies it received included a copy of the mortgage modification agreement signed by Mr. Hartman. Summit's own file contained a copy of that agreement signed only by its assistant vice-president, Jennifer Calenda-Cole, but not by Mr. Hartman.
Summit moved for summary judgment on the basis of the release language of the mortgage modification agreement. The motion was adjourned to permit discovery *1218 relevant to its enforceability. A court-appointed discovery master issued a written directive dated November 25, 1991, requiring Summit to produce three representatives for depositions to be taken by the Baxts. On November 27, one of the attorneys for the Baxts wrote Mr. Sylvester, asking to have Summit's original credit file available at the forthcoming deposition of Scott Witherspoon, a Summit officer. Mr. Sylvester refused, but Grove's attorneys proceeded with Mr. Witherspoon's deposition. On December 1, apparently after the conclusion of that deposition, Helen Chaitman, Esq., representing Grove, wrote to Mr. Sylvester listing documents she wanted produced for the forthcoming depositions of Elwood Bowman, III and Ms. Calenda-Cole. The list included a demand for "the entire original files in response to our document request." The hearing judge could not determine what "document request" the Grove attorney was referring to, but he speculated that the reference was to the November 27th letter.
Mr. Sylvester obtained Summit's "working loan file" in preparation for the deposition the following day. Because Summit treated the file as an open, active file, more than 130 documents had been added to it since it was previously produced for inspection. Mr. Sylvester and Mr. Liloia met with Ms. Calenda-Cole immediately before her deposition commenced. Mr. Liloia advised putting the copy of the modification agreement with Mr. Hartman's signature into Summit's "working loan file." Ms. Calenda-Cole did so. The hearing judge determined the following about Mr. Liloia's advice:
One can reasonably draw an inference that this discussion between the attorneys and Ms. [Calenda-Cole] was designed to in effect salt the bank's file with the document that had been obtained from Grove's file in order to mislead counsel. Thus when the loan file was presented to Ms. Chaitman on December four, it contained at least two copies of the modification agreement obtained from Grove's files. She was not told of this[,] but she had no reason to believe also that the loan file produced that morning was in precisely the same form as when she had inspected it six months earlier.
During the course of her deposition, Ms. Calenda-Cole testified that she did not remember receiving the signed copy of the mortgage modification agreement with Mr. Hartman's ink signature on it. Mr. Liloia and Mr. Sylvester knew that Summit did not have the original of the agreement, that is, the copy signed in ink by Mr. Hartman, because the copy in the file that they produced at the deposition was a copy of the document from Grove's files which Summit's attorneys had found there and which Grove had copied for them. Ms. Chaitman asked Ms. Calenda-Cole or Mr. Liloia and Mr. Sylvesterthe record is unclear to whom the question was directed "Do you have an original because I haven't seen one?" Mr. Liloia answered, "Whatever is in the files or in our attorney's office." Ms. Chaitman asked, "The only thing we have is the one that's unsigned completely[,] but I believe you submitted one that had a signature[,] but is that just a fax? " (Emphasis added.)
Despite having told Ms. Calenda-Cole just a few minutes earlier that the copy of the mortgage modification agreement copied from Grove's copy during document inspection should be put into Summit's "working loan file" to be produced for inspection at the deposition, Mr. Liloia's answer to Ms. Chaitman's question was, "I don't know, we'll have to check." Mr. Sylvester added, "I'll check the files." Ms. Chaitman then added, "Because I never saw one. That was the only one you ever produced in your papers that was assumed to have Paul Hartman's signature on it but I don'twhether you have the original or a faxed copy or what." Mr. Sylvester responded, "Okay, I'll have to check."
The hearing judge commented about this exchange:

*1219 Considering that the two attorneys and Ms. [Calenda-Cole] had only moments before had a conversation about the placement of the modification agreement in the file, their answers were disingenuous. There can be no doubt that Mr. [Liloia] and Mr. Sylvester were very much aware that the bank file contained no document bearing Hartman's original signature. And that the bank had no faxed copy.
The attorneys gathered again a few days later for the continued deposition of Mr. Witherspoon. Ms. Chaitman said to Mr. Sylvester, "[N]ow I would like to see the faxed copy which Jennifer [Calenda-Cole] received. Obviously, I'm entitled to see that document since you are moving for summary judgment based on it." Mr. Sylvester told her, in effect, to "start asking questions of the witness" because he was not there to be interrogated. A few minutes later, Ms. Chaitman asked Mr. Sylvester directly, "The copy annexed to the motion for summary judgment, was that taken from the bank's file?" He answered, "I'm not here to answer questions. I don't know. You know I'm not going to answer the questions." (Emphasis added.) To Ms. Chaitman's repeated inquiries about the provenance of the document, Mr. Sylvester answered that he would take her request under advisement.
When the deposition of Ms. Calenda-Cole resumed, Ms. Chaitman asked her about the source of Summit's copy of the mortgage modification agreement with Mr. Hartman's signature on it. She answered that she did not know where the faxed copy that she believed existed came from. She was next asked the source of the copy of the agreement annexed to her affidavit. She answered that she did not know.
Mr. Liloia then interjected, "I can tell you where it came from." He then told Ms. Chaitman that it came from her client's file, that it had been obtained during the inspection of that file during the lawsuit, and that it had been given to Summit by its attorneys to put in Summit's files.
At this point, Ms. Chaitman interrupted the depositions and moved for sanctions. We emphasize that all of this discovery activity took place in the foreclosure action. We reiterate that before there was any disposition of the sanction motion, the foreclosure action had been settled. Summit was released from all claims. Although the Baxts specifically reserved their right to proceed against Mr. Liloia and Mr. Sylvester by a separate action, that separate damage action was dismissed by an order for summary judgment which was affirmed by our court and by the Supreme Court.
Commenting on the procedural path which had brought the matter before him despite the settlement of the foreclosure action and the affirmance of the dismissal of the damage action on summary judgment, the hearing judge's opinion declared:
The Supreme Court opinion says that Grove's sanctions motion was not decided before the foreclosure action settled and that the Baxts did not specifically preserve as part of that settlement the right to seek sanctions against [Liloia] and Sylvester. One would think that should have been the end of it. Baxt[s], represented by competent counsel, traded away their right to seek sanctions against the attorneys in that action for the overall benefits to them of the settlement agreement and for the additional right to pursue a separate and[,] as it turns out, meritless lawsuit against [Liloia] and Sylvester.
Nonetheless, the Supreme Court saw fit apparently out of some sense of outrage at the egregious conduct of the attorneys, to permit the Baxts to reopen this foreclosure matter and seek counsel fees. The Supreme Court left to this court to determine, "the scope of the defendant's misconduct and the appropriate amount of attorneys' fees and costs to be assessed against them."
*1220 The hearing judge then noted that the remedy which the Supreme Court granted to the Baxts "is predicated on [Liloia] and Sylvester having violated discovery rules" and that the Court had cited R. 4:23-3 and -4. However, he concluded:
[I]n this case demands were not properly made and while the attorneys may be criticized for failure to comply with emerging but as yet imprecise standards of professionalism, and perhaps for violating the rules of professional conduct with respect to the requirement of candor toward an adversary, they violated no discovery rules.
This conclusion is inconsistent with what is the Supreme Court's, at least tentative, conclusion and directive that discovery sanctions are available and warranted, and that they should be imposed. The Supreme Court's opinion states:
We observe that Rule 4:23-3 provides for reasonable expenses where the opposing party "fails to admit ... the truth of any matter as requested under R. 4:22," should the party requesting the admission thereafter prove the truth of the matter, and that Rule 4:23-4 provides for costs where a party "fails to comply with a demand for a copy of a document made pursuant to R. 4:18-2." The relief sought here-attorney's fees and costs-would have been available under those rules.... By placing the signed agreement in Summit's files and by misleading plaintiffs as to its source, defendants violated the mandate of our Court Rules that fair dealing with opposing parties is an absolute requirement even in an adversary system such as ours....
... [T]he trial court should determine the scope of defendants' misconduct and the appropriate amount of attorney's fees and costs to be assessed against them.
[Baxt v. Liloia, supra, 155 N.J. at 210-11, 714 A.2d 271 (footnote omitted).]
We conclude that the hearing judge was obligated to comply with this clear mandate of the Supreme Court. In re Plainfield-Union Water Co., 14 N.J. 296, 303, 102 A.2d 1 (1954); Brown v. Township of Old Bridge, 319 N.J.Super. 476, 494, 725 A.2d 1154 (App.Div.), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999); Maxfield v. Board of Educ. of Ridgewood, 217 N.J.Super. 267, 270, 525 A.2d 727 (App.Div.1986); Hellstern v. Smelowitz, 17 N.J.Super. 366, 370-71, 86 A.2d 265 (App.Div.1952).
Furthermore, we hold that R. 4:23-2(b) provides explicit authority to impose an attorney's fee as a sanction for the discovery misconduct at issue here. A judge had ordered "that certain limited discovery be conducted in connection with the issue of the enforceability and scope of Paragraph 4 [the release provision] of the Note Modification Agreement executed by The Grove Mercantile Center." Pursuant to that order, the court-appointed discovery master directed Summit to produce Ms. Calenda-Cole, Mr. Bowman and Mr. Witherspoon for depositions. The hearing judge found that Summit's attorneys and Ms. Calenda-Cole had formed a "design[ ] to in effect salt the bank's file with the document that had been obtained from Grove's file in order to mislead counsel." The attorneys, but also Ms. Calenda-Cole, conducted themselves in accordance with that design. That sort of intentional frustration of a deposition by clearly unethical conduct directed at obstructing the accomplishment of the specific purpose of a court-ordered deposition-investigating "the enforceability and scope of [the release provision] of the Note Modification Agreement"-constitutes non-compliance with the order to conduct discovery on that issue. Cf. R. 4:23-1(b) ("For the purposes of this subdivision," i.e., R. 4:23-1, "an evasive or incomplete answer is to be treated as a failure to answer."); Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 466, 713 A.2d 411 (1998) (Pollock, J., concurring). R. 4:23-2(b) states, *1221 If a party or an officer, director, or managing or authorized agent of a party... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:... [T]he court shall require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure....
In the light of the facts of this case, this provision of the rules authorized the imposition of the attorney's fee sanction according to the Supreme Court's mandate.
Moreover, we need not base our conclusion on the happenstance that a witness who was a managing or authorized agent of Summit participated with Summit's attorneys in the obstruction of discovery. The Supreme Court declared in the present case that "[b]y placing the signed agreement in Summit's files and by misleading plaintiffs as to its source, defendants violated the mandate of our Court Rules that fair dealing with opposing parties is an absolute requirement even in an adversary system such as ours." Baxt v. Liloia, supra, 155 N.J. at 210, 714 A.2d 271. Quite apart from any specific provisions of the discovery rules, an inherent authority empowers our courts to impose sanctions for so blatant a violation of the spirit of those rules.[2]See Aetna Life & Cas. Co. v. Imet Mason Contractors, 309 N.J.Super. 358, 365, 707 A.2d 180 (App. Div.1998); Pontidis v. Shavelli, 296 N.J.Super. 420, 424-25, 686 A.2d 1275 (App.Div.1997); Maciag v. Strato Med. Corp., 274 N.J.Super. 447, 463, 644 A.2d 647 (App.Div.1994); In re Timofai Sanitation Co., 252 N.J.Super. 495, 505-06, 600 A.2d 158 (App.Div.1991); Oliviero v. Porter Hayden Co., 241 N.J.Super. 381, 387-88, 575 A.2d 50 (App.Div.1990) and cases cited therein; cf. McKenney v. Jersey City Med. Ctr., 330 N.J.Super. 568, 587-88, 750 A.2d 189 (App.Div.2000) (holding that an attorney who knows his client or a material witness intends to present testimony at trial that will deviate significantly from his deposition testimony has an ethical obligation to convey that fact to his adversary). Costs and attorneys' fees should have been assessed against Mr. Liloia and Mr. Sylvester in this case.
The order appealed from is reversed and the case is remanded to the Chancery Division to assess costs and an appropriate attorney's fee against Mr. Liloia and Mr. Sylvester as a sanction for their misconduct.
NOTES
[1] Baxt v. Liloia, 155 N.J. 190, 714 A.2d 271 (1998).
[2] The Baxts did not argue before the Chancery Division that it had the inherent power to impose sanctions, apart from any power conferred on it by a specific rule. Nonetheless, we have considered the argument on appeal because the issue to which it is directed-deterring violations of the spirit of the discovery rules-is of public significance. Nieder v. Royal Indem. Ins. Co., 62 N.J. at 229, 234, 300 A.2d 142 (1973); Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 230, 708 A.2d 401 (1998).