760 A.2d 353 (2000)
334 N.J. Super. 557
Tony CAVALLARO, Plaintiff-Respondent,
v.
JAMCO PROPERTY MANAGEMENT, Defendant-Appellant, and
JML Landscaping, Inc., and Village Commons, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 2000.
Decided October 23, 2000.
*354 Cynthia A. Satter argued the cause for appellant (Stephen E. Gertler, Wall, attorney; Ms. Satter and Belinda V. Skeen, on the brief).
Melissa H. Luce, Morristown, argued the cause for respondent (Stephen S. Weinstein, Morristown, attorney; Ms. Luce, on the brief).
Before Judges BAIME, CARCHMAN and LINTNER.
*355 The opinion of the court was delivered by CARCHMAN, J.A.D.
This appeal requires us to address the recurring and vexing problem of violations of the discovery subpoena and notice provisions of R. 4:14-7(c) (the Rule) and the appropriate sanction for violating the Rule. In this case, the violation resulted in defendant obtaining privileged medical and psychiatric records. Judge Bernhard imposed a sanction disqualifying counsel from further representation of defendant in the underlying matter. We granted leave to appeal and now conclude that the judge's findings of a violation of the Rule were supported by the record. Under the circumstances presented, disqualification was an appropriate sanction and not an abuse of discretion.

I.
The issue arises in the following factual and procedural context. Following a slip and fall on an icy sidewalk outside of his condominium, plaintiff Tony Cavallaro filed a personal injury action for damages alleging permanent injury to his ankle. During plaintiff's deposition, his attorney instructed him not to answer certain inquiries regarding prior treatment for depression. After plaintiff's motion for a protective order was denied with limiting conditions, plaintiff answered questions concerning his medications and doctors' identities, and executed releases for certain medical and employment records previously subpoenaed by defendant. Although the judge had advised that defendant could subpoena records for any additional information needed and, anticipating an objection, that plaintiff could object pursuant to R. 4:10-3, defendant did not request any additional authorizations to release records concerning plaintiff's depression.
On March 2, 2000, defendant served subpoenas duces tecum and notices of depositions, returnable on March 10, 2000, on five additional medical and health services providers, including an infectious diseases specialist, a psychiatrist, and two psychologists (March 10 doctors' subpoenas), as well a vocational rehabilitation organization. The depositions were scheduled for defense counsel's office in Wall Township, Monmouth County, notwithstanding that the witnesses were located in Hunterdon and Somerset Counties. Although copies of the subpoenas and notices were also served on plaintiff's counsel, unbeknownst to plaintiff, the originals were accompanied by a cover letter which provided:
Attached please find a Subpoena and a deposition notice which requires your appearance in my office on March 10, 2000. At that time, you are required to produce copies of the following documents regarding [plaintiff];
1. All patient information forms, including history documents;
2. All medical records;
....
However, as a convenience to you, if you would like to forward copies of these documents to my attention, then your appearance would not be necessary. The subpoenaed evidence may not be produced or released until the date specified for the taking of the deposition. If you are notified that a motion to quash the subpoena has been filed, you may not produce or release the evidence until either ordered to by the court, or all the parties consent thereto....
In bold, capitalized type immediately following the above paragraph, the letter stated:
IF YOU WOULD LIKE TO AVOID APPEARING IN MY OFFICE ON MARCH 10, 2000 AND WOULD RATHER FORWARD THE COPIES TO ME THAT WOULD BE ACCEPTABLE.
Please contact this office if you will be attending the deposition. Otherwise, I will assume that the above is agreeable.
*356 On March 9, 2000, plaintiff contacted one of the psychologists, Dr. Kate Riley, to obtain her fax number to send her a copy of plaintiff's motion for a protective order and to quash the subpoena. The doctor informed counsel that consistent with the cover letter sent with the subpoena, she had already forwarded a summary of plaintiff's treatment records to defendant's attorney. Dr. Riley's "impression was that she had to send the information before March 10 in order to avoid appearing for a deposition on March 10," and she had not understood from the cover letter or subpoena that there was any requirement to refrain from sending the records before the return date. Despite the requirement of the Rule, plaintiff did not receive any "forthwith" notice of defendant's receipt of Dr. Riley's records. The infectious diseases specialist, Dr. Joseph Gugliotta, also received defendant's subpoena cover letter and sent plaintiff's medical records to defendant. Those records were later forwarded to plaintiff on demand.
Upon discovering that Dr. Riley had already released a summary of plaintiff's treatment records, plaintiff immediately filed a motion seeking an order to quash the March 10 subpoenas and a protective order prohibiting any use of information already obtained through those subpoenas. The motion was premised on defendant's failure to comply with the Rule, and in the case of the doctors, that the records sought related to "communications between plaintiff and psychologists and/or psychiatrists" which were protected by the psychologist-patient privilege pursuant to N.J.S.A. 45:14B-28, N.J.R.E. 505, and Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Counsel also requested that privileged notations regarding plaintiff's psychiatric care and contained within previously subpoenaed records of plaintiff's endocrinologist be redacted. In the alternative, plaintiff sought an in camera review of the March 10 subpoenaed records to determine whether the psychologist-patient privilege should be pierced.
Defendant challenged plaintiff's assertion of privilege, claiming that plaintiff had put his pre-existing illness in issue and that "there [was] no other place for the defense to turn to see if for example, plaintiff made an admission about the happening of the accident, ... or if he made an admission thereafter about his damages."
Following oral argument on the motion, Judge Bernhard concluded that plaintiff's mental health treatment records were privileged and that defendant failed to establish under Kinsella v. Kinsella, 150 N.J. 276, 306-07, 696 A.2d 556 (1997), that plaintiff had effected a limited waiver of the privilege by placing his mental health at issue. He also found that the March 10 doctors' subpoenas were "so violative of the Rules of Civil Procedure and Code of Professional Responsibility that this Court must actmust comment and take independent action," despite defense counsel's explanation that "that is the way we normally do things."
The judge initially observed that the subpoenas failed to comply with R. 4:14-7(b)(1), as they required doctors from other counties to attend depositions in defense counsel's office in Monmouth County rather than in their own counties. The judge also noted that those subpoenas violated R. 4:14-7(b)(2) because each of the doctors qualified as a treating physician, psychologist, or expert and was therefore entitled either to be deposed at his or her residence or place of business or to be compensated for travel and expenses.
More germane to the issue before us, the judge found the subpoenas violated R. 4:14-7(c) because they did not state that the subpoenaed evidence was not to be produced or released until the return date, or, in the event of notice of a pending motion to quash, at anytime absent a court order or consent of all the parties. To the contrary, the judge noted that the cover letter stated, and reiterated in bold letters, that the subpoenaed witnesses could avoid the inconvenience of an appearance by forwarding *357 copies of the subpoenaed documents to defense counsel's office. In sum, Judge Bernhard concluded:
Defense counsel's attempt at obtaining medical information concerning the plaintiff was an egregious violation of the Rules.... The purported subpoenas were a willful attempt to gain information in an unpermitted fashion. It was obviously a willful violation of the Rules of Civil Procedure. The subpoenas purported to require attendance at a location other than permitted. Inappropriate service was made and the cover letter spelled out counsel's true intent, that is to have the physicians and psychologists merely forward information to him.
Finally, the judge found that defense counsel's subpoena practice violated both RPC 3.4(c) and RPC 4.1 by "knowingly violat[ing] the Rules ... and ma[king] false statements to the person[s] to whom he addressed the documents." Noting that defendant had already been provided privileged information as a result of the improper March 10 subpoenas, Judge Bernhard found that "[t]his Court has no other alternative, as a result of counsel's egregious conduct, than to quash the subpoenas and disqualify counsel from further representation of the defendant in this case." The judge ordered that any materials obtained as a result of those subpoenas, including those materials already sent by Drs. Riley and Gugliotta, be returned without defense counsel or defendant's carrier making copies. Defense counsel was ordered to arrange for substitute counsel by April 24, 2000.

II.
We briefly address the issue of privilege. There is no legitimate argument that the doctors' records were anything other than privileged under the psychologist-patient, N.J.S.A. 45:14B-28; N.J.R.E. 505, or physician-patient privileges, N.J.S.A. 2A:84A-22.2; N.J.R.E. 506. As such, the records were subject to an issue/waiver analysis as required by Kinsella, supra, 150 N.J. at 306-07, 696 A.2d 556; In Re Kozlov, 79 N.J. 232, 243-44, 398 A.2d 882 (1979), to determine whether the privileges should be pierced. See also Runyon v. Smith, 322 N.J.Super. 236, 242, 730 A.2d 881 (App.Div.1999), aff'd, 163 N.J. 439, 749 A.2d 852 (2000) (noting that the privilege serves "to protect[ ] the individual from public revelation of innermost thoughts and feelings that were never meant to be heard beyond the walls of the therapist's office" (internal quotation marks omitted)).
Because Judge Bernhard found that plaintiff was not pursuing any claim which placed his mental state in issue, he concluded that defendant failed to establish a legitimate need for the evidence, its relevance to any issue before the court, and a lack of availability from any less intrusive source. Kinsella, supra, 150 N.J. at 306-07, 696 A.2d 556. Ultimately, he concluded that absent an issue as to plaintiff's mental state, plaintiff had not effected a limited waiver of privilege. He concluded that plaintiff was simply seeking damages for "physical pain he endured as a result of a fractured ankle." In fact, a review of plaintiff's depositions suggests that his damage claims were narrowhis ability to engage in rock climbing, biking, and fly-fishing were limited. He did not complain of any emotional, psychiatric or other non-physical complaints. We conclude that the judge's findings were supported by the record before him and should not be disturbed.

III.
We now address the issue of primary concernthe violation of the Rule. While defendant concedes that the subpoena did not technically comply with the Rule, defendant asserts that the disqualification order should be reversed because defendant's subpoena practice "substantially complied" with the Rule and its purported primary objective of notifying other parties *358 that information from non-parties is being sought. We disagree.
The Rule provides:
A subpoena commanding a person to produce evidence for discovery purposes may be issued only to a person whose attendance at a designated time and place for the taking of a deposition is simultaneously compelled. The subpoena shall state that the subpoenaed evidence shall not be produced or released until the date specified for the taking of the deposition and that if the deponent is notified that a motion to quash the subpoena has been filed, the deponent shall not produce or release the subpoenaed evidence until ordered to do so by the court or the release is consented to by all parties to the action. The subpoena shall be simultaneously served no less than 10 days prior to the date therein scheduled on the witness and on all parties, who shall have the right at the taking of the deposition to inspect and copy the subpoenaed evidence produced. If evidence is produce by a subpoenaed witness who does not attend the taking of the deposition, the parties to whom the evidence is so furnished shall forthwith provide notice to all other parties of the receipt thereof and of its specific nature and contents, and shall make it available to all other parties for inspection and copying. [R. 4:14-7(c) (emphasis added).]
Contrary to defendant's contention that the purpose of the Rule is merely to provide notice to other parties that discovery is being sought from non-parties, the Rule is more expansive in its scope and protection. The Rule has three objectives: 1) to provide litigants the opportunity of full discovery from non-parties; 2) to afford notice of such inquiries to adversaries; and 3) to permit adversaries an appropriate opportunity to challenge the propriety of such discovery. We observe that the Rule's present configuration was designed to address discovery abuses, including the misuse apparent here.
Under the Rule's clear mandate, simple notice is not sufficient. The subpoena must notify the recipient that documents shall not be produced or released until the date of the deposition and that a notification of a motion to quash requires withholding the documents until further notice. A practice which obfuscates or conflicts with these requirements, confuses subpoenaed witnesses, and lulls witnesses into avoiding the inconvenience of appearing by encouraging untimely production undercuts the purpose and effectiveness of the Rule. That is the case hereand the result was inevitable given the subpoenas' missing language and the highlighted invitation to produce in the accompanying cover letter.
Any possible misunderstanding as to our Supreme Court's intent in promulgating and amending the Rule is dispelled not only by the clarity of the Rule itself, but also by commentary explaining its import:
[the Rule] should, moreover, be interpreted and applied consistently with its intention of foreclosing unilateral discovery and giving adverse parties the opportunity to move to quash the subpoena or otherwise object to its compliance on the basis of privilege or other appropriate ground.
Because of continuing abuses following the adoption of paragraph (c), the rule was again amended, effective September 1992, in two respects. First it requires the person served with the subpoena not only to withhold production or release of the subpoenaed evidence until the date specified for the deposition, but also to continue to do so if noticed of the making by a party of a motion to quash. The second change is to require service of the subpoena on the witness and all parties no later than 10 days prior to the date fixed for hearing. This means that an objecting party, in order to obtain the benefit of the rule, will have to file the motion to quash and serve it on the witness within that 10-day period.
*359 [Pressler, Current N.J. Court Rules, comment 3 on R. 4:14-7(c)(2001) (emphasis added) (citations omitted).]
The Rule effectively prescribes a procedure whereby a party will be notified of a subpoena for records and will have an adequate opportunity to challenge the bona fides of the request without concern that the adverse party will secure the records prematurely contrary to the Rule's provisions.
The March 10 subpoenas simply command the recipients to appear with "[a]ny and all records regarding [plaintiff]," and caution that failure to appear would subject the recipients to penalties, suit for damages, and contempt. Defense counsel's omission of the ten day requirement coupled with the cover letter's generous offer of relief from the inconvenience of traveling to counsel's Monmouth County office and appearing for a deposition were specifically designed to accomplish the result achieved here. The bold type invitation to "cooperate" caused Dr. Riley's, and perhaps Dr. Gugliotta's, predictable response of releasing privileged information concerning plaintiff's psychological and unrelated medical treatments prior to the subpoena return date and plaintiff's timely filing of a motion to quash.
Relying on our decision in Ricra v. Barbera, 328 N.J.Super. 424, 429, 746 A.2d 68 (App.Div.2000), defendant nevertheless asserts that the March 10 subpoenas "substantially complied with the [R]ule's requirements." That reliance is misplaced. Factors to be considered in determining whether the doctrine of substantial compliance may serve to avoid defeat of a valid claim on technical grounds include:
(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the [rule] involved; (3) a general compliance with the purpose of the [rule]; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not strict compliance with the [rule].
[Ricra, supra, 328 N.J.Super. at 429, 746 A.2d 68 (quoting Cornblatt v. Barow, 153 N.J. 218, 239, 708 A.2d 401 (1998)).]
Defendant contends that the cover letter was sufficient to provide the requisite information missing from the subpoenas, and that it "did not incite anyone to produce the subpoenaed records prior to the scheduled deposition date." Defendant further suggests that plaintiff was not prejudiced, despite the release of privileged information, because "[p]laintiff was well aware that defendant was seeking these medical records, given what transpired during plaintiff's two depositions and as a result of plaintiff's filing a motion for a protective order."
We first observe that unlike Ricra, which dealt with an affidavit of merit, the Rule in issue before us is prophylactic and designed to avoid the result complained of here. That defendant incorporated the notices required by the Rule in letter form rather than in the body of the subpoena is irrelevant since it engaged in a course of conduct which rendered the requisite notices superfluous in any event. Although the subpoenas and deposition notices were forwarded to counsel, the offending documentthe cover letterwas not. That letter provided the witnesses a seemingly convenient alternative to the proposed burden of traveling to Monmouth County on short notice to present records which could be more easily mailed. The convenience of the subpoenaed party became the purported object of the letter rather than the protection of plaintiff whose privileged records were being sought. And the apparent opportunity to expedite the transaction became too tempting.
We fully appreciate that pragmatic problems arise in the course of discovery proceedings, but the subpoena power is a significant one which must be exercised in good faith and in strict adherence to the rules to eliminate potential abuses. See Pressler, Current N.J. Court Rules, comment 3 on R. 4:14-7(c); Brookside *360 Apartments, Inc. v. C.S., 276 N.J.Super. 501, 648 A.2d 275 (App.Div.1994). Practical problems are not insurmountable. Offering a subpoenaed witness the opportunity to forward documents is not inappropriate if the witness is clearly apprised that the documents may not be forwarded until after a date certain before which an adversary may move to quash the subpoena and preclude transfer of the documents entirely. Moreover, adherence to the terms of the Rule by including in the subpoena itself the requisite language regarding production of the documents avoids the necessity of arguing "substantial compliance" when simple compliance is a straight-forward task. Providing an adversary with the same documents and correspondence served on the witness so that appropriate and timely action can be taken to protect the interests of all parties is equally practical and should be mandated by the Rule.
Judge Bernhard found that "the purported subpoenas were a willful attempt to gain information in an unpermitted fashion" and that "the cover letter spelled out counsel's true intent, ... to have the physicians and psychologists merely forward information to him." See Pascale v. Pascale, 113 N.J. 20, 33, 549 A.2d 782 (1988). Upon examination of the record, we agree with that assessment. The nettlesome violation of scheduling depositions within the ten-day notice window and in an inappropriate location, here Monmouth County, when the Rule clearly requires otherwise only serves as further support for the findings made here.

IV.
Defendant contends that Judge Bernhard's sanction disqualifying counsel was an abuse of discretion. We disagree.
The significance of adherence to discovery rules has been a continuing matter of concern and focus of our courts. As the Supreme Court recently observed:
Discovery rules are designed "to further the public policies of expeditious handling of cases, avoiding stale evidence, and providing uniformity, predictability and security in the conduct of litigation." "[They] ... were designed to eliminate, as far as possible, concealment and surprise in the trial of lawsuits to the end that judgments rest upon real merits of the causes and not upon the skill and maneuvering of counsel." If the discovery rules are to be effective, courts must be prepared to impose appropriate sanctions for violations of the rules....
Chief Justice Vanderbilt observed over thirty years ago, "As with all rules it is necessary that there be adequate provisions for the enforcement of the rules [regarding] discovery against those who fail or refuse to comply. Sanctions are peculiarly necessary in matters of discovery[,] and the power to invoke them is inherent in our courts."
However, competing policies are involved in disputes over procedural issues. "The defendant's right to have the plaintiff comply with procedural rules conflicts with the plaintiff's right to an adjudication of the controversy on the merits." "Because of these competing policies, and because of the varying levels of culpability of delinquent parties, a range of sanctions is available to the trial court when a party violates a court rule."
[Abtrax Pharmaceuticals, Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 512-13, 655 A.2d 1368 (1995) (citations omitted).]
Those sanctions include, for example, assessment of expenses for failing to admit documents or the truth of certain facts, R. 4:23-3, or failing to attend depositions, R. 4:23-4, dismissal with or without prejudice for failing to answer interrogatories, R. 4:23-5(a), and the exclusion of testimony for failing to file an expert report, R. 4:23-5(b). These sanctions represent measured *361 and appropriate responses to specific discovery abuses.
In assessing the propriety of a sanction, we recognize that "apart from any specific provisions of the discovery rules, an inherent authority empowers our courts to impose sanctions for ... [blatant violations] of the spirit of those rules." Summit Trust Co. v. Baxt, 333 N.J.Super. 439, 450, 755 A.2d 1214 (App. Div.2000). Our standard of review of the imposition of sanctions requires us to abstain from interfering with those discretionary decisions unless an injustice has been done. Cunningham v. Rummel, 223 N.J.Super. 15, 19, 537 A.2d 1314 (App.Div. 1988). See also Abtrax, supra, 139 N.J. at 517, 655 A.2d 1368 (noting that the standard of review for discovery misconduct is whether the trial judge abused his discretion).
In Brookside Apartments, Inc. v. Cerone, supra, we rejected the extreme remedy of dismissing plaintiff's complaint with prejudice where plaintiff's attorney violated numerous rules, including R. 4:14-7(c), to improperly subpoena sealed juvenile records. 276 N.J.Super. at 507-09, 648 A.2d 275. We concluded that the trial judge abused her discretion in dismissing plaintiff's complaint sua sponte because defendants did not show that the conduct of plaintiff's attorney caused them "demonstrable prejudice" which could not be overcome by a lesser remedy. Id. at 508, 648 A.2d 275. On remand, we held that in fashioning a lesser remedy, the trial judge could consider its prior order resealing the records, directing counsel to turn over their copies to the court, and striking the designation of any witness whose identity was discovered through the improperly obtained records. Id. at 507-08, 648 A.2d 275.[1]
Here, Judge Bernhard found that because privileged information was supplied to defense counsel, "[t]his court has no other alternative, as a result of counsel's egregious conduct, than to quash the subpoenas and disqualify counsel from further representation of the defendant in this case." He also found counsel's violations of four court rules, R. 4:14-7(b)(1), (b)(2), (c), and R. 1:9-3, and two Rules of Professional Conduct, RPC 3.4(c) and 4.1, "so egregious that [counsel's] presence in this case could no longer be tolerated."
Moreover, plaintiff asserts that contrary to Judge Bernhard's April 7, 2000 order directing defense counsel to return the privileged documents to plaintiff, as of July 18, 2000, counsel had not provided them, and has become, and still is privy to plaintiff's psychotherapy records.
Disqualification of counsel is a harsh discretionary remedy which must be used sparingly. In Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 536 A.2d 243 (1988), the Supreme Court instructed us on the balancing required before imposing a sanction as severe as disqualification. The Court noted that "a motion for disqualification calls for us to balance competing interests, weighing the `need to maintain the highest standards of the profession' against `a client's right to freely choose his counsel.'" Id. at 218, 536 A.2d 243. Although Dewey did not involve a discovery rule violation, its basic principles and balancing analysis are relevant here. The Rule violation here is a critical determinative which tips the balance significantly in favor of disqualification. That sanction reflects the severity of the violation and validates the integrity of the profession and its commitment to compliance with the Rules of Court.
Less severe remedies such as assessments of expenses or counsel fees fail to adequately address both the Rule violation and the attendant harm of access and exposure to privileged documents. This remedy acknowledges not only the nature of the documents and information revealed *362 but also the importance of insuring that abuses of this Rule are dealt with in a meaningful fashion. The violation here resulted in defendant and counsel accessing privileged records not otherwise available. Significantly, the accessibility of those records had already been the subject of a prior discovery dispute and motion practice. To suggest that merely barring reference to plaintiff's psychiatric history and information gleaned from the records would be a sufficient remedy is, in reality, no remedy at all. Our concern lies with defendant's ready access to, and now likely familiarity with plaintiff's psychological treatment records. Judge Bernhard expressed similar concern. In light of his findings, we conclude that disqualification of counsel from further representation in this case was not an abuse of discretion.
Affirmed.
NOTES
[1] We also noted, without commenting on the merits of such application, that the trial judge had reserved decision on defendants' motions to disqualify plaintiffs' attorneys and for counsel fees. Brookside, 276 N.J.Super. at 507-08, 648 A.2d 275.